344 So.2d 1276 (1977)
James McCASKILL, Jr., Appellant,
v.
STATE of Florida, Appellee.
Otis T. WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 45009, 45010.
Supreme Court of Florida.
April 7, 1977.
*1277 Emmett A. Moran, Altamonte Springs, for appellants.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
PER CURIAM.
This is a direct appeal from appellants' convictions of felony murder in the first degree. Death sentences were imposed by the trial court following jury advisory sentence recommendations of life imprisonment. We have jurisdiction.[1]
The facts are as follows. The appellants, McCaskill and Williams, were charged with attempted robbery, robbery, and first degree murder, all charges resulting from robbery of a liquor store and its patrons occurring on August 29, 1973. The trial testimony established that three men entered the liquor store and lounge armed with various weapons. The appellant-McCaskill was identified as having a semi-automatic pistol, appellant-Williams a handgun, and the third unnamed accomplice a shotgun. The cash registers in the premises were emptied and the patrons were required to put their valuables on the bar and stand facing against the wall. One patron named Hardy recognized the appellant, Williams, from prior time they had spent together in the county jail. He initially was threatened, and then the three offenders left the premises. Moments latter appellant-Williams returned and shot Hardy twice in the neck with a handgun at close range. Hardy recovered and identified the appellants at trial. After the shooting, appellant-Williams left the store, followed shortly by two other patrons, Cooper and Ellison. They ran toward the car where Williams had joined the two other robbers, Ellison carrying a chair. A shotgun blast from inside the car killed Ellison. There is no evidence as to who fired the fatal shot. Possession of the shotgun during the robbery was established in the third unnamed accomplice, not the appellants, McCaskill and Williams. Each appellant was tried by a jury and found guilty of attempted robbery, robbery, and the first degree murder of Ellison.
The jury in its advisory sentence to the trial judge recommended a life sentence for each appellant, voting 11 to 1 for McCaskill and 7 to 5 for Williams. The trial judge overruled the jury's recommendation and imposed the death penalty for both, expressing great regard for two elements. *1278 First, the appellants knowingly created a great risk of death to 35 to 40 people in the liquor store and lounge. Second, the killing was wanton and unnecessary, occurring after the commission of a robbery, with no need to shoot the man chasing them armed only with a chair. The trial judge noted the difference in the jury votes recommending life imprisonment, concluding the reason for favoring McCaskill was "there was no testimony showing that Mr. McCaskill did any shooting whatever." The trial judge concluded "the act of one was the act of all" and imposed the death sentence upon both appellants.
Appellants contend: (1) the death penalty statute is unconstitutional; (2) the trial court committed fundamental error by failing to instruct the jury on lesser included offenses of attempt, and by rereading certain portions of the instructions; (3) the trial court erred by failing to grant a change of venue; and (4) the trial court erred by failing to provide written instructions to the jury.
The contention that the imposition of the death penalty is unconstitutional has been rejected both by this Court, State v. Dixon, 283 So.2d 1 (Fla. 1973), and by the United States Supreme Court, Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
The second contention that the trial judge failed to instruct the jury properly is without merit. Considering the instructions as a whole, there was no fundamental error and the jury was properly advised of the applicable law. We note that there were no objections to the instructions either at the instruction conference or after they were presented to the jury. See Florida Rule of Criminal Procedure 3.390(d); Williams v. State, 285 So.2d 13 (Fla. 1973).
Appellant's third point attacks the trial court's failure to grant a change of venue. Trial counsel for the appellants filed a pretrial motion for change of venue, but neither asked for it to be heard nor raised the issue during voir dire or at any time thereafter until this appeal. Appellants accepted the jury panel in this cause after using eight of twenty peremptory challenges. We adopt the test stated in Kelley v. State, 212 So.2d 27, 28 (Fla. 2d DCA 1968):
"Knowledge of the incident because of its notoriety is not, in and of itself, grounds for a change of venue. The test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely upon the evidence presented in the courtroom. Singer v. State, (Fla. 1959) 109 So.2d 7; Collins v. State, (Fla.App. 1967) 197 So.2d 574 and cases cited therein."
The United States Supreme Court affirmed this principle in Murphy v. State of Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), holding that jury exposure to news accounts of the crime with which a defendant is charged does not presumptively deprive the defendant of due process. Further, it held the defendant must show inherent prejudice in the trial setting or facts which permit an inference of actual prejudice from the jury selection process in order to merit a change of venue. No such prejudice appears in this record.
Appellants' final point concerns the failure of the trial judge to provide written instructions to the jury in violation of Rule of Criminal Procedure 3.390(b). Appellants' trial counsel neither requested the charges be reduced to writing nor objected to the failure of the trial judge to do so. The failure of the trial judge to comply with Rule of Criminal Procedure 3.390(b) under the circumstances of this cause was not prejudicial error. See Matire v. State, 232 So.2d 209 (Fla. 4th DCA 1970); Coggins v. State, 101 So.2d 400 (Fla. 3d DCA 1958).
In accordance with our approval of the death penalty statute in State v. Dixon, supra, our final responsibility in this cause is to "review [the] case in light of the other decisions and determine whether or not the *1279 punishment is too great." State v. Dixon, supra, at 10. We there rejected the argument that our capital felony statute was unconstitutional because it allowed the discretionary imposition of death penalties. We said in Dixon:
"Discretion and judgment are essential to the judicial process... .
"Thus, if the judicial discretion possible and necessary under Fla. Stat. § 921.141, F.S.A., can be shown to be reasonable and controlled, rather than capricious and discriminatory, the test of Furman v. Georgia, supra, [408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)] has been met... ." 283 So.2d at 6, 7.
In explaining how this reasonable and controlled discretion should be applied in the sentencing process, we said:
"It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present. Review by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case. No longer will one man die and another live on the basis of race, or a woman live and a man die on the basis of sex. If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great. Thus, the discretion charged in Furman v. Georgia, supra, can be controlled and channeled until the sentencing process becomes a matter of reasoned judgment rather than an exercise in discretion at all." 283 So.2d at 10.
In Alvord v. State, 322 So.2d 533, 540 (Fla. 1975), we said:
"It is our responsibility to review the sentence in the light of the facts presented in the evidence as well as other decisions, and determine whether or not the punishment is too great... .
* * * * * *
"The statute contemplates that the trial jury, the trial judge and this Court will exercise reasoned judgment as to what factual situations require the imposition of death and which factual situations can be satisfied by life imprisonment in light of the totality of the circumstances present in the evidence... ."
In Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the United States Supreme Court upheld our death penalty statute and stressed the importance of this Court's role, stating:
"The Florida capital-sentencing procedures thus seek to assure that the death penalty will not be imposed in an arbitrary or capricious manner. Moreover, to the extent that any risk to the contrary exists, it is minimized by Florida's appellate review system, under which the evidence of the aggravating and mitigating circumstances is reviewed and reweighed by the Supreme Court of Florida `to determine independently whether the imposition of the ultimate penalty is warranted.' Songer v. State, 322 So.2d 481, 484 (Fla. 1975). See also Sullivan v. State, 303 So.2d 632, 637 (Fla. 1974). The Supreme Court of Florida, like that of Georgia, has not hesitated to vacate a death sentence when it has determined that the sentence should not have been imposed... .
"Under Florida's capital-sentencing procedures, in sum, trial judges are given specific and detailed guidance to assist them in deciding whether to impose a death penalty or imprisonment for life. Moreover, their decisions are reviewed to ensure that they are consistent with other sentences imposed in similar circumstances. Thus, in Florida, as in Georgia, it is no longer true that there is `"no meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases where it is not."' Gregg v. Georgia, 428 U.S. 153, p. 188, 96 S.Ct. 2909, p. 2932, 49 L.Ed.2d 859, quoting Furman v. Georgia, 408 U.S. 238, *1280 at 313, 92 S.Ct. 2726, at 2764, 33 L.Ed.2d 346 (White, J., concurring). On its face the Florida system thus satisfies the constitutional deficiencies identified in Furman." Id. at 252, 96 S.Ct. at 2967. (Emphasis supplied)
We have reviewed other first degree felony murder convictions involving robbery. Juries, under our new death penalty statute, have been reluctant to recommend the imposition of the death penalty in all but the most aggravated cases despite general knowledge and concern of the citizenry over the substantial increase in crime. Two recent robbery-murder cases[2] similarly involved defendants who were principals and the trigger man either was not identified or was not before the court. In each of these cases the jury recommended and the trial judge imposed life sentences. In Slater v. State, 316 So.2d 539 (Fla. 1975), this Court found it necessary to reduce the death sentence of an accomplice because the jury recommended life imprisonment and the trigger man, who was identified, had received a life sentence in a negotiated plea. We have, however, imposed the death penalty in the remotely similar case of Sawyer v. State, 313 So.2d 680 (Fla. 1975). Its aggravating circumstances, however, are distinguishable from those here.
The imposition of life sentences in similar cases is not absolutely controlling. Were they to be ignored, however, our death penalty statute, Section 921.141, Florida Statutes, could not be upheld under the requirements of Proffitt v. Florida, supra, and Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
We also cannot ignore the recommendation of the jury. This Court, in reviewing the propriety of the death sentence, must weigh heavily the advisory opinion of the sentencing jury. Lamadline v. State, 303 So.2d 17 (Fla. 1974). Juries are the conscience of our communities. In the recent decision of Tedder v. State, 322 So.2d 908 (Fla. 1975), we held that to sustain a sentence of death following a jury recommendation of life, the facts justifying a sentence of death must be clear and convincing. These recent decisions and the facts and circumstances of recent cases were unavailable to the trial judge at the time he made his difficult sentencing decision.
On the facts and circumstances of the instant cases, considered with the action of the jury in these cases and the action by other juries and judges in similar cases, we find the sentence of death inappropriate for either of the appellants.
The appellants' convictions are affirmed. The death sentences imposed on the defendants for first degree murder are reduced to life imprisonment.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND and HATCHETT, JJ., concur.
ADKINS and ROBERTS (Retired), JJ., concur but dissent from reduction of sentence.
SUNDBERG, J., concurs on McCaskill but dissents on Williams' reduction of sentence.
NOTES
[1] Article V, Section 3(b)(1), Florida Constitution.
[2] Trowell v. State, 300 So.2d 342 (Fla. 4th DCA 1974); Lee v. State, 316 So.2d 87 (Fla. 4th DCA 1975).