456 So.2d 454 (1984)
Edward Clifford THOMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 61170.
Supreme Court of Florida.
September 13, 1984.
*456 Sheldon Golding, Sp. Public Defender, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen. and Sharon Lee Stedman, Asst. Atty. Gen., West Palm Beach, for appellee.
BOYD, Chief Justice.
This cause is before the Court on appeal from a judgment of conviction for two counts of murder in the first degree. For one of the counts of first-degree murder the trial court sentenced appellant to death. Appellant is entitled to appeal both convictions and the sentence of death, and this Court has jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant Edward Clifford Thomas stands convicted of the premeditated murders of James Walsworth, an elementary school principal, and Russell Bettis. On the night of December 2, 1980, James Walsworth's body was found lying beside his car in a parking lot. He had been stabbed in the chest. The next morning Russell Bettis was discovered lying unconscious in an alley near the parking lot. Bettis had been severely beaten. He never regained consciousness and died several months later. Appellant was sentenced to *457 life imprisonment for the murder of Walsworth and to death for the murder of Bettis. For the reasons that follow, we affirm the convictions and the sentence of death.
A few days after the discovery of the Walsworth homicide, the police received a call from a citizen informant who said that appellant Thomas had killed the school principal and attacked Bettis, and told the police where Thomas worked. On December 8, 1980, several detectives went to appellant's place of work and asked him to accompany them to their offices for questioning. Appellant agreed and on the way to the police station said, "I know what this is all about. I beat up Russell, but I didn't kill the principal." At police headquarters, the officers advised appellant of his constitutional rights and appellant signed a form giving his consent to be questioned.
At first appellant told the police that he had been in a fight with Bettis several weeks prior to when the injured Bettis was found. Then he admitted giving Bettis a beating on the night of December 2. The officers had him repeat his statement and they recorded it on tape. After a short interval, the officers again advised appellant of his rights and he again agreed to be questioned. This time they asked him about the murder of Walsworth. At first appellant denied knowing anything about it, but later admitted that he killed Walsworth. After questioning appellant about the details, the police took the second confession in tape-recorded form.
Appellant was initially charged with first-degree murder for the killing of Walsworth and the attempted murder of Bettis. After Bettis died, however, the latter charge was amended so as to charge a second count of murder in the first degree. In addition to his confessions, the evidence at trial included the testimony of two other persons  appellant's father and the citizen who initially notified the police  who testified to incriminating admissions on the part of the appellant. The jury found appellant guilty of first-degree murder on both counts.
After the sentencing hearing, the jury recommended life sentences for both murders. The judge followed the recommendation with regard to the murder of Walsworth but, finding additional aggravating circumstances associated with the subsequent murder of Bettis, imposed a sentence of death for the second murder.
Appellant contends that there is insufficient evidence to support his conviction for the premeditated murder of Russell Bettis; that the trial court erred in refusing to exclude appellant's confessions from evidence; that the trial court erred in allowing testimony about blood found on appellant's shirt; and that the trial judge made an improper and prejudicial comment concerning a defense witness. Appellant also contends that the sentence of death is improper and that the death penalty law is unconstitutional.
The evidence showed that Bettis was beaten, kicked, or bludgeoned so severely that his skull was fractured in many places. He was rendered unconscious and was not treated until he was discovered the next day. He remained comatose and over the next several months was treated by brain surgeons in a futile effort to save his life. On May 16, 1981, he died without ever having regained consciousness. Appellant contends that he may not be found guilty of premeditated murder since Bettis was still alive when appellant left him in the alley after beating him. Appellant's contention is without merit. The evidence showed the nature of the injuries intentionally inflicted on Bettis. Whether the jury believed that appellant used a weapon or only his fists and feet, the evidence is clear in either event that appellant attacked Bettis with lethal force. The wounds inflicted resulted in death. Thus it was proper for the jury to presume that appellant intended the consequences of his actions. Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982); Rhodes v. State, 104 Fla. 520, 140 So. 309 (1932). Moreover, the detectives who testified concerning appellant's statements said that appellant told *458 them he had killed Bettis because Bettis had seen him kill Walsworth. If the jury believed this testimony, it could have concluded that appellant not only intended to kill Bettis but thought he had done so months before Bettis died.
Appellant contends that the trial judge should have excluded appellant's statements to police as the product of coercion, confusion, and intoxication. A confession that is obtained by coercion may not be used in evidence. Brewer v. State, 386 So.2d 232 (Fla. 1980). Techniques calculated to exert improper influence, to trick, or to delude the suspect as to his true position will also result in the exclusion of self-incriminating statements thereby obtained. Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); Frazier v. State, 107 So.2d 16 (Fla. 1958); Harrison v. State, 152 Fla. 86, 12 So.2d 307 (1943). To render a confession inadmissible, however, the delusion or confusion must be visited upon the suspect by his interrogators; if it originates from the suspect's own apprehension, mental state, or lack of factual knowledge, it will not require suppression. See State v. Caballero, 396 So.2d 1210 (Fla. 3d DCA 1981); Ebert v. State, 140 So.2d 63 (Fla. 2d DCA 1962). Here there was no evidence of threats, promises, or other improper influences.
Appellant also says that because of his youth and his state of intoxication when questioned, he was incapable of validly waiving his rights and knowingly making voluntary incriminating statements. However, "this Court has recognized that youthful age, although a factor to be considered in determining the voluntariness of a statement, will not render inadmissible a confession which is shown to have been made voluntarily. State v. Francois, 197 So.2d 492 (Fla. 1967)." Ross v. State, 386 So.2d 1191, 1195 (Fla. 1980). Regarding intoxication, at the suppression hearing appellant and another witness testified that appellant got drunk before he was taken in for questioning. The detectives who questioned appellant testified that he did not appear intoxicated, that they advised him of his rights, that he intelligently waived those rights, and that he voluntarily gave the statements. The mere fact that a suspect was under the influence of alcohol when questioned does not render his statements inadmissible as involuntary. "The rule of law seems to be well settled that the drunken condition of an accused when making a confession, unless such drunkenness goes to the extent of mania, does not affect the admissibility in evidence of such confession, but may affect its weight and credibility with the jury." Lindsey v. State, 66 Fla. 341, 343, 63 So. 832, 833 (1913). See generally Deconingh v. State, 433 So.2d 501 (Fla. 1983); Reddish v. State, 167 So.2d 858 (Fla. 1964); McCray v. State, 289 So.2d 765 (Fla. 3d DCA 1974). The trial judge found that the state had carried its burden of showing that appellant's confessions were freely and voluntarily given. Appellant has failed to show that the trial judge's determination was erroneous.
Appellant contends that it was error to admit his slightly bloodstained shirt into evidence because there was nothing to logically relate it to the murders. We find this position to be without merit. There was evidence that appellant wore the shirt on the night of the murder of Walsworth. The shirt was properly determined to be relevant and its probative value was for the jury to consider. The defense was allowed to bring out evidence of a study showing that a large portion of randomly selected clothing sent to laundries contains some blood.
Appellant contends that the trial judge uttered an improper and prejudicial remark about one of the defense witnesses within the hearing of the jury. The defense witness in question was an admitted homosexual prostitute whose testimony about typical amounts paid for sexual services of male prostitutes was intended to undermine the state's evidence pertaining to the motive for the killing of one of the victims. After the witness had testified, the judge said, "Get him out of here." *459 Defense counsel immediately approached the bench, objected, and moved for a mistrial. The judge denied the motion on the ground that the tone and expression of the remark were such that it was not likely to have been interpreted as a comment on the credibility of the witness. The judge also instructed the jury to disregard his remark and not to interpret it as reflecting on the character or credibility of the witness. We conclude that the curative instruction was sufficient to correct any negative inference the jury may have drawn from the comment. There is no basis for reversal on this point. Mayan v. State, 325 So.2d 442 (Fla. 3d DCA), cert. denied, 339 So.2d 1170 (Fla. 1976); Rembert v. State, 311 So.2d 199 (Fla. 3d DCA 1975). Even though the judge admitted at the bench that he found the defense witness disgusting, the words, "Get him out of here," may be seen as the judge's way of ordering that the trial should proceed with the calling of the next witness. The judge must supervise the trial so that it proceeds in an orderly fashion. See Hamilton v. State, 366 So.2d 8 (Fla. 1978).
The issue of the judge's comment was again raised by motion for new trial. At the hearing on the motion for new trial, the court reporter testified concerning the tone and loudness of the judge's utterance. Defense counsel moved for a continuance of the hearing on the ground that personal circumstances had rendered him unprepared. The judge refused to grant a continuance and denied the motion for new trial. Appellant argues that the denial of a continuance was reversible error. The hearing on the motion for new trial, however, was held approximately six weeks after the motion was filed. We conclude that the refusal to continue the motion hearing was not an abuse of discretion. Magill v. State, 386 So.2d 1188 (Fla. 1980), cert. denied, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981).
Appellant's arguments that the use of death penalty constitutes cruel or unusual punishment are not novel ones. In effect we are asked to reconsider past holdings. The legislature's action prescribing capital punishment has been upheld and this Court is bound by those past decisions. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
Regarding the sentence of death imposed in this case, appellant argues that it is improper because the jury recommended life imprisonment and the judge failed to give it adequate consideration and failed to properly weigh all the circumstances.
Pursuant to section 921.141, Florida Statutes (1979), the trial judge found as aggravating circumstances that appellant had been convicted of another capital felony (the murder of Walsworth), id. § 921.141(5)(b); that the murder of Bettis was committed for the purpose of avoiding arrest or preventing prosecution for the murder of Walsworth, § 921.141(5)(e); that it was committed to disrupt or hinder the exercise of a governmental function, § 921.141(5)(g); that it was especially heinous, atrocious, or cruel, § 921.141(5)(h); and that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification, § 921.141(5)(i). The sentencing court found that these aggravating circumstances outweighed the two mitigating circumstances found to exist: that appellant had no significant record of prior criminal activity, § 921.141(6)(a), and that he was only twenty years of age at the time of the capital felony, § 921.141(6)(g).
Appellant argues and the state concedes that the court erred in giving separate consideration to the two statutory factors of avoidance of arrest and disruption or hindrance of a governmental function. We agree since the two aggravating circumstances are both based on the same essential feature of the capital felony. White v. State, 403 So.2d 331 (Fla. 1981); Welty v. State, 402 So.2d 1159 (Fla. 1981). Only one of these two statutory aggravating factors may be based on the evidence that appellant killed Bettis to prevent him *460 from informing on or testifying against appellant. This error, however, does not necessarily require reversal of the sentence under our system of appellate review in capital cases.
Appellant does not argue that any of the remaining aggravating circumstances considered are invalid. We have reviewed the evidence and find them valid and proper for consideration.
Appellant contends that the sentencing court erred in sentencing him to death after receiving the verdict of the jury recommending a sentence of life imprisonment. He relies on this Court's decision in Tedder v. State, 322 So.2d 908 (Fla. 1975), where it was said: "A jury recommendation under our ... death penalty statute should be given great weight. In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Id. at 910. In McCaskill v. State, 344 So.2d 1276 (Fla. 1977), a case where the appellants' liability for murder rested on the felony murder rule because there was no evidence that they had killed or shared in the intent to kill the victim, the Court interpreted Tedder to have held "that to sustain a sentence of death following a jury recommendation of life, the facts justifying a sentence of death must be clear and convincing." 344 So.2d at 1280.
Although a jury recommendation of life in a capital case is to be given great weight, "the ultimate decision as to whether the death penalty should be imposed rests with the trial judge." Hoy v. State, 353 So.2d 826, 832 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). The sentence of death in such a situation will be upheld if the facts "supporting the sentence of death are clear and convincing." Id. at 833.
On numerous occasions this Court has upheld death sentences imposed following jury recommendations of life where there were several aggravating circumstances, the judge properly found no mitigating circumstances, and where generally from the "totality of the circumstances" it was believed that the jury override was proper. See, e.g., Johnson v. State, 393 So.2d 1069, 1074 (Fla. 1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976).
Where there are one or more aggravating circumstances and the trial judge has found no mitigating circumstances sufficient to outweight the aggravating circumstances, application of the Tedder rule calls for inquiry into whether there was some reasonable ground for a life sentence that might have influenced the jury to make such a recommendation. Where the jury recommendation is not based on some "valid mitigating factor discernible from the record," the Tedder standard for a jury override is met. Lusk v. State, 446 So.2d 1038, 1043 (Fla. 1984); Stevens v. State, 419 So.2d 1058, 1065 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). Where a sentence of death is otherwise appropriate and it appears that some matter not reasonably related to a valid ground of mitigation has swayed the jury to recommend life, such as through emotional appeal, prejudice, or some similar impact, it is proper for the judge to overrule the jury's recommendation. See Porter v. State, 429 So.2d 293 (Fla.), cert. denied, ___ U.S. ___, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
Here there were several aggravating circumstances and the trial judge determined that they were not outweighed by the mitigating circumstances found to exist. Other than the two statutory mitigating circumstances which the trial judge found were entitled to little weight, there does not appear to be any reasonable basis discernible from the record to support the jury's recommendation. The fact that the first victim may have been a homosexual and that he may have used the services of appellant as a prostitute, even if it were a valid basis for mitigating the first murder, *461 which we do not hold, is clearly not a valid basis for mitigating the seriousness of the second murder. It was the second murder, which the evidence showed was committed because the victim had witnessed the first murder, that was deemed by the trial court to merit a sentence of death. See Bolender v. State, 422 So.2d 833 (Fla. 1982), cert. denied, 461 U.S. 939, 103 S.Ct. 2111, 77 L.Ed.2d 315 (1983) (fact that victims were armed dealers in illegal drugs was not a valid ground of mitigation supporting life recommendation). We therefore hold that the trial judge met the Tedder standard in sentencing appellant to death.
The proven and properly considered aggravating circumstances are: (1) the previous murder of Walsworth; (2) that the murder of Bettis was committed to eliminate him as a possible witness to the murder of Walsworth; (3) that the method of the murder of Bettis rendered it especially heinous, atrocious, or cruel; and (4) that the murder was committed in a cold, calculated and premeditated manner without pretense of legal or moral justification. We conclude that the sentencing judge could properly determine that these factors outweighed the mitigating circumstances found even in view of the jury's recommendation of a life sentence. The sentence of death represents a reasoned judgment based on the circumstances of the capital felony and the character of the offender after giving due consideration to the recommendation of the jury.
We affirm the judgments of conviction for two first-degree murders. We affirm the sentence of death.
It is so ordered.
ADKINS, ALDERMAN and EHRLICH, JJ., concur.
McDONALD, J., concurs on conviction, dissents on sentence with an opinion, in which OVERTON, J., concurs.
OVERTON, J., dissents with an opinion.
McDONALD, Justice, concurring on conviction, dissenting on sentence.
I concur with the affirmance of conviction but dissent to the imposition of the death penalty. The jury recommended life. Juries reflect the conscience of the community. Twelve people, all from different walks of life but representing a community's views, after being instructed on the matters that they should consider, have exercised their discretion to recommend life imprisonment on two counts of homicide. The trial judge has rejected their recommendations and imposed death. Why? The answer is not apparent.
I suggest that the collective judgment of the jury should prevail unless the trial judge, and we likewise on review, can find that there is no rational basis for a life sentence  not that the sentencing judge simply disagrees with the jury's recommendations. Many intangibles enter the recommendation of life over death, and I feel that when a jury makes such a recommendation it assuredly should be followed, excepting in only the most extreme and clear circumstances. The United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), sought to eliminate the arbitrary imposition of the death penalty. It expected judges to preclude the passionate imposition of the death penalty by juries infected with visceral reactions to the crime, or in response to the clamor of the vociferous. These factors were to be replaced with guided discretion. That Court, I submit, did not envision judges frequently imposing death sentences when juries recommend life. The prediction of the Supreme Court that Florida would have more uniformity in the imposition of the death penalty if the final decision is left in the hands of the judge is likely true. However, that result seemingly is being attained in part by trial judges imposing death in numerous instances where the jury has recommended life rather than imposing life when the jury suggests death. I question whether that was contemplated or intended.
*462 In this case it cannot be said, notwithstanding the grossness of this defendant's acts, that death is the only proper sentence. The trial judge should have accepted the jury's recommendations and imposed life sentences. Since he did not, we should direct him to do so.
OVERTON, J., concurs.
OVERTON, J., dissenting.
I concur with the dissent of Justice McDonald. I find that the unanimous jury recommendation of a life sentence was not unreasonable under the total circumstances of this case. I respect the jurors, who heard the evidence and saw the witnesses. The majority fails to properly apply Tedder and McCaskill and appears to have granted unlimited life and death power to the trial judge, at least in this cause.