884 So.2d 540 (2004)
Ross LAWSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-904.
District Court of Appeal of Florida, Fourth District.
November 3, 2004.
*541 Carey Haughwout, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
We deny rehearing but withdraw our prior opinion and substitute the following to correct a factual error.
Ross Lawson appeals his conviction of multiple charges including burglary of a dwelling, strong arm robbery, carjacking, and felony causing bodily injury. He claims that the trial court erred in denying his attorney's motion for continuance because of inadequate time for trial preparation. Because of his own efforts in discharging one attorney and causing another to withdraw, appellant delayed commencement of this trial for over three years. Under the circumstances presented, we conclude that the trial court did not abuse its discretion in denying the motion for continuance and affirm.
Lawson was charged with multiple criminal acts in case number 97-16344, the Whitaker case. This case was one of nineteen with which Lawson was charged after *542 an apparent crime spree. Although charged in 1997, Lawson was not tried on any of the cases until June of 2001. This delay was the result of Lawson's discharge or attempts to discharge the attorneys who had been assigned to represent him, and the time it took for each subsequent attorney to represent him.[1] None of the counsel assigned to represent Lawson were found ineffective by the trial court. After the last attorney was discharged, the court refused to appoint another attorney, so Lawson chose to represent himself. A couple of months later, the last discharged attorney was appointed as stand-by counsel. Four months later, on December 8, 2000, Lawson again complained about his stand-by counsel, and the court appointed Mr. Lambidis as "one last stand-by counsel."
At a hearing on April 27, 2001, Lawson agreed to the appointment of Lambidis as trial counsel, instead of merely stand-by counsel. Trial had already been set for the beginning of June. Three of Lawson's cases were to be tried, the order of which had been discussed over a year previously. At docket call on June 4, 2001, the court announced the agreed order in which the three cases would be tried, estimating that each case would take no more than a day and a half. Thus, the court intended to try all three cases that week, starting with the Garvin case and then trying the Whitaker case, the case from which this appeal has been taken. Lambidis requested a continuance, asking that the three cases be tried together. The court denied the request, stating,
[t]he Court announced several weeks ago the order in which these cases would be tried. And so for the record there were three separate incidents occurring on the same day.... The Court having come this far in the last several weeks to try them separately, the Court's decision is to proceed separately, protecting to the best of the Court's ability the defendant's rights to have excluded prejudicial matters that involve the other cases, rather than trying all three of them together.
After the conclusion of closing arguments in the Garvin case. Lawson himself requested that he be given time to obtain other experts and subpoena documents. The court explained that the second trial would start that day. It stated, "If I find down the road in my judgment, being fair, that it was abuse of my discretion to require a trial today, I will order a new trial." The state attorney then suggested that they wait to begin the next trial until the Garvin jury returned a verdict, and suggested that the court might even come back in two weeks to try the case. To that suggestion, the court stated, "I'm not coming back here" due to other trial commitments. The state attorney then suggested that they just wait to see what would happen with the Garvin verdict. The court agreed.
However, after returning from recess, the court advised the parties that they would have to proceed with the Whitaker trial that day, even though the Garvin jury apparently had not yet returned a verdict. The judge explained that he was not familiar with the policies of the division in "getting *543 justice administered properly," and those policies apparently would require the next case to start immediately. Although the parties questioned the judge as to whether his decision was influenced by anyone else, he insisted that this was his decision. The judge ordered that the trial on the second case would commence immediately, and reiterated his position that if he later felt that the trial should not have gone forward, he would deal with the issue at that time.
The state told the judge that during the recess, Lawson agreed to permit Lambidis to be his lawyer on other cases. Lambidis then requested a continuance in order to consolidate the remaining two cases. Lambidis argued that the cases were inextricably intertwined. He also requested a continuance to obtain an expert to assist with the defense of voluntary intoxication. The trial court again denied the request for continuance. The court ordered the parties to be prepared to start the case at 1:30 that afternoon.
When the parties returned at 1:30, Lambidis motioned for a continuance on the ground that "there is DNA on Ms. Whitaker's case, and there hasn't been anything done on the case in terms of the DNA." Lambidis apologized to the court for failing to do any work on the DNA evidence, explaining that he probably "should have done the DNA ... and for whatever reason, there hasn't been anything done on the DNA, and that's why I'm moving for this continuance." The trial court denied the motion.
The case proceeded to trial. The victim testified that a man forced his way into her home after asking to use her phone. He threw the victim onto the dining room table. She hit his head with a glass and cut him on the arm. The man slammed her onto the floor and began kicking her, breaking three of her ribs. He then demanded the victim give him her money, jewelry, and car keys. He told her that he had a gun and motioned his hand toward his waist. The victim never saw the gun. He eventually left in the victim's white BMW convertible. The victim later identified Lawson as the perpetrator in both a photo line-up and a live line-up. An officer testified to her pursuit of the stolen vehicle without apprehending its occupants.
Lawson was apprehended the following day. He was irate when placed into the police vehicle and attempted to exit the vehicle. The officer took him to the hospital to receive treatment for the injuries he received while trying to escape police custody.
At the hospital, the lead detective questioned Lawson after reading him his Miranda rights. In his subsequent statement, Lawson admitted that he took a white convertible, and he made a reference to "[t]hat bitch who cut my face." He denied that he was ever carrying a gun.
The detective again questioned Lawson, after he signed a waiver of rights form, at the police station where the interview was recorded. In the interview Lawson said, "[w]hatever anybody says that I did, anything, an ID me on, I did it. I did anything and everything that anybody I.D.'s me on. It's plain and simple. I did it. I was on crack. I can't remember specifics." Lawson only vaguely remembered escaping in the BMW, explaining again that he was on crack, scared, and trying to get away.
The state also offered DNA evidence connecting Lawson to the crime scene. Two DNA tests were run, one much more precise than the other. Both times the DNA evidence matched Lawson's sample. The expert testified that the second test demonstrated that the chances of any other unrelated Caucasian having the same *544 DNA was one in 813 quadrillion. Lawson objected to all of the DNA testimony on the ground that he had not had enough time to prepare for the DNA evidence.
Lawson presented no evidence in his case. Prior to resting, Lambidis proffered that had the court granted the motion to appoint an expert pertaining to voluntary intoxication, that person would be able to explain to the jury that the acts involved were brought on by severe crack and alcohol problems, which testimony would assist in the voluntary intoxication defense that Lawson did not have the ability to form the requisite intent to commit these crimes. The court agreed to instruct the jury on voluntary intoxication, and Lambidis argued that defense to the jury in closing. The jury returned a verdict on all charges except a kidnapping charge. He was sentenced and filed this appeal.
Lawson argues on appeal that the trial court erred in denying his motion for continuance because his counsel had inadequate time to prepare for trial. Even though Lambidis contended at trial that he was unprepared because he needed to review the DNA evidence and obtain an expert on voluntary intoxication, we cannot say that the court erred in denying the motion for continuance, given the following circumstances: Lambidis was appointed stand-by counsel three and a half months prior to trial and full counsel at least a month before the start of the trial; Lawson had either discharged or caused the withdrawal of two other attorneys, causing the short time for trial preparation; Lambidis did not request the appointment of experts during the month prior to trial; and Lambidis did not make a request for an expert until after the court reconsidered and denied the request to delay the start of the trial until the jury came back with a verdict on the first trial.
Although we analyze whether the court abused its discretion in precluding adequate time to prepare this case, we view what unfolded at trial considerably differently than Lawson. After discharging one attorney and causing another to withdraw over a period in excess of three years, Lawson represented himself with stand-by counsel. Then, a month before trial, Lawson changed his mind again and agreed to allow Lambidis to represent him at trial. No mention was made of a continuance of the already set trials.
At the commencement of the trial period in which the court ruled that three cases against Lawson would be tried, Lambidis moved for a continuance so that the cases could be consolidated. He did not complain that he was unprepared to go to trial or needed additional witnesses. Instead, he thought the cases were inextricably intertwined. The court, on the other hand, determined that they should be tried separately to avoid prejudice.
The announced plan for the trial docket was that the Whitaker trial, the present case, would be tried immediately after the conclusion of the first case, Garvin. After the conclusion of the Garvin case, but before the jury returned a verdict, the state suggested waiting to start the second trial until the jury returned a verdict. While Lawson himself was requesting more time for preparation, the court clearly informed Lawson that the second trial would go forward. The court acceded to the state's request to wait until the Garvin jury came back to discuss how to proceed with the second case. However, after a short recess, the court denied this motion based on the policies of the division. Thus, the motion the court denied was the suggestion by the state that the start of this case wait until the jury came back, a short continuance in any event.
*545 At that point, both the state and Lambidis moved for a continuance to consolidate the remaining two cases to be tried, a motion which the court had denied at the beginning of the trial period. This request also was not based upon the inadequacy of trial preparation time. Lambidis also moved for a continuance to get an expert on voluntary intoxication, a defense Lambidis had known about from the commencement of his representation because he had moved to suppress Lawson's confession on that basis. The court does not abuse its discretion in denying a continuance based upon an "eleventh hour request" for an expert witness where such request could have been made earlier. See Davis v. State, 704 So.2d 681, 683 (Fla. 1st DCA 1997) (finding trial court did not abuse its discretion in denying motion for continuance in order for defendant to secure mental health expert when motion was made at the commencement of the final hearing for violation of probation).
Just before voir dire commenced, Lambidis made a final request for continuance because he had not prepared for the DNA evidence in the second case. He admitted that he probably should have looked at it, and, in what we think is a reference to the preceding three years of delay, he said "there hasn't been anything done on the DNA, and that's why I'm moving for this continuance." The record reveals that the subject of DNA evidence was discussed multiple times, and the court had even authorized the employment of DNA experts for the defense on at least two occasions. Why no experts were hired is not entirely clear from the record, but undoubtedly the discharge and/or withdrawal of Lawson's trial counsel had something to do with the lack of focus in this case.
Lawson frames the issue as the trial court's abuse of discretion in denying his motion for continuance to provide adequate time to prepare for trial. In D.N. v. State, 855 So.2d 258 (Fla. 4th DCA 2003), we held that the trial court erred in denying defense counsel's motion for continuance of a probation violation proceeding on the ground that the defense was not prepared to go forward where, through no fault of the defendant, the public defender appearing for trial had only been given the case the day before and needed to secure the testimony of two witnesses who were unavailable for trial. We said,
The granting or denial of a motion for continuance is within the trial court's discretion. See Bouie v. State, 559 So.2d 1113 (Fla.1990). Denial of a motion for continuance "should not be reversed by an appellate court unless there has been a palpable abuse of this judicial discretion" that "clearly and affirmatively" appears in the record."
855 So.2d at 260 (quoting Magill v. State, 386 So.2d 1188, 1189 (Fla.1980)). We cited to McKay v. State, 504 So.2d 1280 (Fla. 1st DCA 1986), wherein the court affirmed the denial of a motion for continuance in order to prepare for trial where the defendant retained private counsel only a few days prior to the start of trial. The defendant contended that he had a right to be represented by counsel of his choice. The court stated,
While criminal defendants have the right to a reasonable opportunity to select and be represented by chosen counsel, and the right to a preparation period sufficient to assure at least a minimal quality of counsel, the right is not absolute but at some point must bend before countervailing interests involving effective administration of the courts. Thus, when a defendant asks for a continuance on the eve of trial in order to allow time for recently retained counsel to prepare, the court must balance that request against many other factors. . . .
*546 504 So.2d at 1282 (citations omitted, emphasis added). It then listed seven factors, which we adopted in D.N., as appropriate guides to determining whether denial of a continuance due to lack of adequate time to prepare a defense was error:
1) the time available for preparation,
2) the likelihood of prejudice from the denial,
3) the defendant's role in shortening preparation time,
4) the complexity of the case,
5) the availability of discovery,
6) the adequacy of counsel actually provided and
7) the skill and experience of chosen counsel and his pre-retention experience with either the defendant or the alleged crime.
Id. (citing U.S. v. Uptain, 531 F.2d 1281, 1286-87 (5th Cir.1976)).
We also relied on McKay in concluding that the defendant was not entitled to a continuance in Langon v. State, 791 So.2d 1105 (Fla. 4th DCA 1999). Much like this case, the defendant Langon continually disrupted the orderly processing of his case by discharging multiple attorneys. After discharging the last attorney and obtaining the trial court's permission for Langon to represent himself, Langon again moved for a continuance, even though the trial court told him well ahead of time that no further continuances would be permitted. On appeal, we agreed with McKay that a defendant's right to reasonable time for trial preparation may bend to the efficient administration of justice, particularly where a defendant's role in determining the remaining time available for preparation was great. 791 So.2d at 1113. Where Langon, who was represented by effective counsel, very shortly before trial decided to represent himself, he could not then obtain continuances to delay the start of trial and thwart the orderly administration of justice.
We conclude that the trial court did not abuse its discretion. This case had been pending for nearly four years at the time of trial. Had Lawson not repeatedly discharged his prior attorneys or caused them to withdraw, none of whom the court found were rendering ineffective assistance, there would have been ample time to prepare. Lawson played a prominent role in shortening the preparation time for trial. When Lambidis changed from stand-by counsel to trial counsel, a month remained to get ready for trial. Just as in Langon, we cannot conclude that Lawson should be able to manipulate the judicial system and prevent his case from reaching trial. Just as in McKay and Langon, Lawson reached the point where his right to adequate time for preparation for trial is counterbalanced by the right to the effective administration of justice. His own actions were responsible for the lack of adequate preparation time, if any. Although Lawson argues that he was prejudiced by the denial of the continuance, neither D.N. nor McKay require that a court grant a continuance where a defendant who has himself caused the shortened trial preparation time through his manipulation of the judicial system later claims he is unprepared to go to trial.
While the court did consider the policies of the criminal division in denying the motion to continue the start of the second case until after the jury came back with a verdict in the Garvin case, we do not see how this is inappropriate nor how the denial of this short continuance prejudiced Lawson. Certainly, even if the trial court had allowed this short continuance, there would not have been time to secure other experts.
*547 D.N. states that the appellate court must find a "palpable" abuse of discretion that clearly and affirmatively appears in the record. We find no such abuse of discretion here.
We summarily dispose of the remaining points raised by Lawson. He first contends the court's denial of his motion to suppress pretrial identification of him as legally insufficient was error. Although the court was incorrect that the motion was legally insufficient, the error was harmless. We do not know whether the motion to suppress would have been granted on the merits had an evidentiary hearing been held, but even if it had, the improper admission of the pretrial identification would have been harmless given the very strong DNA evidence connecting Lawson with the crimes. See Ferreira v. State, 692 So.2d 264, 265-66 (Fla. 5th DCA 1997).
Lawson also claims that the court erred in allowing the state to exercise a racially motivated peremptory challenge against a prospective juror. He maintains that the reason the state gave for exercising the challenge was unreasonable. While we disagree that the explanation was not reasonable, the court's focus in analyzing the proffered explanation for the strike is not reasonableness, but genuineness. Melbourne v. State, 679 So.2d 759, 764 (Fla.1996). The court did not err in its ruling.
In another issue on appeal, Lawson contends that the court erred in denying his motion to suppress his confession because it was involuntary due to his intoxication. However, as explained by the supreme court in Thomas v. State, 456 So.2d 454 (Fla.1984), "`The rule of law seems to be well settled that the drunken condition of an accused when making a confession, unless such drunkenness goes to the extent of mania, does not affect the admissibility in evidence of such confession, but may affect its weight and credibility with the jury.'" 456 So.2d at 458 (quoting Lindsey v. State, 66 Fla. 341, 63 So. 832, 833 (Fla.1913)). While testimony at the suppression hearing demonstrated that "appellant got drunk before he was taken in for questioning" by the police, the "detectives who questioned appellant testified that he did not appear intoxicated, that they advised him of his rights, that he intelligently waived those rights, and that he voluntarily gave the statements." Id. The supreme court found this evidence sufficient to support the trial court's determination that "the state had carried its burden of showing that appellant's confessions were freely and voluntarily given." Id.; see also Wilson v. State, 573 So.2d 77, 79 (Fla. 2d DCA 1990). The facts are similar in Lawson's case. Thus, the court did not err in denying the motion to suppress.
Finally, while Lawson is correct in his claim that the court erred in admitting evidence of flight, because the flight in which he was engaged was not flight involving this crime, the error was harmless.
Affirmed.
GROSS and HAZOURI, JJ., concur.
NOTES
[1] Lawson first moved to discharge attorney Carpenter but the trial court denied the motion because Lawson had failed to show she was ineffective. Carpenter later withdrew after Lawson filed a bar complaint against her, causing a conflict. Attorney Polay was appointed after Carpenter withdrew. Lawson filed a motion to discharge Polay and obtain substitute counsel, which was denied by the trial court because Lawson failed to demonstrate Polay was ineffective. Lawson discharged Polay and began to represent himself.