CIKLIN, J.
Adalberto Ramos appeals his convictions for four counts of sexual battery upon a child less than twelve years of age, one count of indecent assault, and one count of lewd or lascivious molestation. Ramos raises three points on appeal: 1) the trial court abused its discretion in denying his motion for continuance; 2) the trial court erred in summarily denying his motion for disqualification; and 3) the trial court erred in denying his motion for judgment of acquittal on the indecent assault charge.
We find that the trial court acted within its discretion in denying Ramos’s motion for a continuance and that the motion for disqualification was legally insufficient. We agree, however, that the trial court erred in denying Ramos’s motion for judgment of acquittal on the indecent assault count because the evidence at trial was insufficient to prove the commission of the *1279 crime during the period alleged in the information. Accordingly, we reverse the conviction and sentence for indecent assault. We affirm the remaining convictions and sentences.

Facts

Ramos was charged by information with four counts of sexual battery upon a child less than twelve years of age (counts IIV), one count of indecent assault (count V), and one count of lewd or lascivious molestation (count VI). Ramos was charged with having sexually abused the victim on multiple occasions between September 1, 1999, when the victim was eight years old, and May 13, 2003, just before the victim’s twelfth birthday.
Prior to trial, Ramos changed his attorney at least four times. The defense counsel who represented Ramos at trial, was hired sometime between July 10, 2009 and August 20, 2009. On August 31, 2009, defense counsel filed an amended motion to have Ramos declared indigent for costs. The trial court granted this motion on September 2, 2009.
On Thursday morning, October 15, 2009, the trial court held a calendar call to determine if the parties were ready for trial that was scheduled for the following Monday. The trial judge noted that this was the fifth time that the case had been set for trial and asked defense counsel if he was ready. Defense counsel responded that he was not ready as there were “paperwork” problems with the Justice Administrative Commission (“JAC”) surrounding the costs for deposition transcripts taken by previous counsel. The state had no objection to a continuance.
The trial court noted that Ramos had been in custody for a year and a half, and that Ramos “needs his day in court.” The trial court stated that it was going to leave the trial on for the following Monday and suggested that defense counsel call the JAC and use the fact that the trial was set as leverage. The trial court offered to call the JAC right there during the hearing, but defense counsel asked to handle it himself from his office.
On the following Monday afternoon, just prior to jury selection, defense counsel told the trial court that he had obtained two of the deposition transcripts, but that he had been unable to get two others, including the deposition transcript of the victim. Defense counsel also explained that he had been unable to depose two of the state’s potential witnesses because of the “indi-gency problem.”
Jury selection continued until 8 p.m. that evening. At the conclusion, defense counsel noted that because of the late hour, he had been unable to pick up the additional deposition transcripts and was scheduled to be in front of another judge the following morning. The trial judge asked defense counsel if he could make an opening statement without considering the deposition transcripts, and defense counsel replied, “Yes, I wouldn’t need them.”
The following morning, before opening statements, Ramos filed a written and verified motion to disqualify the trial judge. The motion alleged that the court’s failure to grant a continuance “along with [the court’s] demeanor with undersigned counsel ha[d] caused the Defendant to reasonably fear that he [would] not get a fair and impartial trial.” The trial court found that the motion was legally insufficient and summarily denied it.
By the time the trial court ruled on the motion for disqualification, it was already 1:30 p.m. At that point, the trial court asked defense counsel if he had been able to obtain the remaining deposition transcripts. Defense counsel replied that neither he nor anyone from his office had been able to retrieve it. The prosecutor *1280 was able to locate a copy of the deposition transcript and make copies for defense counsel. The trial court suggested that both parties make their opening statements and the state possibly begin its direct examination of the alleged victim while the copies were being prepared. The court would then give defense counsel time to review the deposition transcript before he cross-examined the witness. The trial court asked defense counsel if that was a “reasonable plan,” to which he replied, ‘Tes, sir.”
After the state completed its direct examination of the alleged victim, the court took a twenty-minute recess for defense counsel to read the deposition transcript. Defense counsel then cross-examined the witness. After the cross-examination, the trial judge asked defense counsel if he was satisfied with his cross. Defense counsel explained that he did the “best [he] could under the circumstances” and reiterated that he was given just twenty minutes before his cross — enough time to “breeze through it.” The court asked if the defense suffered any prejudice. At that time, defense counsel could think of only one possible question that Ramos had wanted him to ask. The trial court then gave defense counsel and Ramos another fifteen minutes to once again review the deposition transcript to determine if they wanted to ask any further questions. After defense counsel had a chance to review the deposition once more with Ramos, the trial judge asked him if there had been any prejudice with regard to his cross-examination of the alleged victim. Defense counsel responded in the negative and acknowledged that he had “covered everything” during his initial cross-examination.
The jury found Ramos guilty as charged on all six counts. The trial court subsequently sentenced Ramos to concurrent life sentences on the four sexual battery counts, fifteen years on the indecent assault count, and thirty years on the lewd and or lascivious molestation count.

Motion for Continuance

Ramos argues on appeal that the trial court erred in denying his motion for a continuance because JAC funding issues resulted in his counsel having inadequate time to prepare for trial. “The granting or denial of a motion for continuance is within the trial court’s discretion. Denial of a motion for continuance should not be reversed by an appellate court unless there has been a palpable abuse of this judicial discretion that clearly and affirmatively appears in the record.” D.N. v. State, 855 So.2d 258, 260 (Fla. 4th DCA 2003) (citations and quotation marks omitted).
In Lawson v. State, 884 So.2d 540 (Fla. 4th DCA 2004), we adopted the following language from McKay v. State, 504 So.2d 1280 (Fla. 1st DCA 1986):
While criminal defendants have the right to a reasonable opportunity to select and be represented by chosen counsel, and the right to a preparation period sufficient to assure at least a minimal quality of counsel, the right is not absolute but at some point must bend before countervailing interests involving effective administration of the courts. Thus, when a defendant asks for a continuance on the eve of trial in order to allow time for recently retained counsel to prepare, the court must balance that request against many other factors....
Id. at 545 (quoting McKay, 504 So.2d at 1282).
In Lawson, we affirmed the denial of a motion for continuance, where the defendant had delayed the commencement of his trial on multiple occasions by discharging one attorney and causing another to with *1281 draw. Id. at 546. In affirming the denial of the motion for continuance, we wrote:
Had [the defendant] not repeatedly discharged his prior attorneys or caused them to withdraw, none of whom the court found were rendering ineffective assistance, there would have been ample time to prepare. [The defendant] played a prominent role in shortening the preparation time for trial.... [The defendant] reached the point where his right to adequate time for preparation for trial is counterbalanced by the right to the effective administration of justice. His own actions were responsible for the lack of adequate preparation time, if any.

Id.

Likewise, here we conclude that no palpable abuse of judicial discretion has been shown. Ramos changed his defense counsel at least four times while his case was pending, with his last change of counsel occurring two to three months before the actual trial date. There is no record evidence showing that any of Ramos’s previous attorneys had provided ineffective assistance. The defense had already moved for four continuances to prepare for trial. Thus, just as in Lawson, Ramos played a prominent role in shortening the preparation time for trial here.
We also reject the argument that “paperwork” problems with the JAC limited defense counsel’s ability to prepare for trial sooner. Ramos hired defense counsel at least two months before the scheduled trial date.[1] The trial court granted defense counsel’s amended motion to have Ramos declared indigent for costs on September 2, 2009. Yet, defense counsel waited six weeks until a status conference a few days before trial to inform the trial court of any funding issues. Furthermore, at the status conference, the trial court offered to call the JAC right there during the hearing, but defense counsel asked to handle it himself from his office.
Finally, defense counsel acquiesced to the trial court’s suggestions with how to proceed with the trial while waiting for the deposition transcripts to become available. Defense counsel acknowledged that he would not need the deposition before making his opening statements. Defense counsel also did not object to the trial court’s suggestion that the state be permitted to proceed with direct examination of the alleged victim while the copy of her deposition transcript was being prepared. Given defense counsel’s assent to the trial court’s proposal as to how to proceed, we cannot say that it was unreasonable for the trial court to conclude that its proposed solution would substantially reduce any likelihood of prejudice caused by denial of the motion for continuance.
Just as in Lawson, Ramos “reached the point where his right to adequate time for preparation for trial is counterbalanced by the right to the effective administration of justice.” See Lawson, 884 So.2d at 546. His own actions and those of his private counsel of choice were responsible for the lack of adequate preparation time, if any. Thus, we conclude that there is no palpable abuse of discretion that clearly and affirmatively appears in the record, and we affirm the denial of Ramos’s motion for continuance.

Motion for Disqualification

Ramos argues that the trial court erred in denying his motion to disqualify *1282 the trial judge. Ramos contends that the motion was legally sufficient in that it alleged that the trial judge’s demeanor, along with the denial of a continuance, caused him to reasonably fear that he would not receive a fair trial. We disagree.
“Allegations in a motion to disqualify are reviewed under a de novo standard as to whether the motion is legally sufficient as a matter of law.” Zuchel v. State, 824 So.2d 1044, 1046 (Fla. 4th DCA 2002). “Whether the motion is legally sufficient requires a determination as to whether the alleged facts [which must be taken as true] would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial.” Id.
First, the trial court’s denial of a continuance is not a sufficient legal ground for judicial disqualification. See Cornil v. State, 698 So.2d 522, 525 (Fla.1997) (“[A]n adverse ruling is not sufficient to establish bias or prejudice.”). Ramos argues that, just like the defendant in Zuchel, he was not alleging mere dissatisfaction with an adverse judicial ruling, but that the trial court’s denial of his motion for a continuance indicated an “unwillingness to hear [his] side of the case.” See Zuchel, 824 So.2d at 1046. This case is distinguishable from Zuchel, however, because here we have already determined that the trial court did not abuse its discretion in denying Ramos’s motion for continuance. A trial court’s ruling that is within that court’s discretion should not “create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial.” See id.
Ramos’s other allegation that the trial judge’s “demeanor with undersigned counsel” had caused him “to reasonably fear that he [would] not get a fair and impartial trial” was also legally insufficient because Ramos failed to specifically describe any facts regarding the trial court’s demeanor. Cf. Franco v. State, 777 So.2d 1138, 1140 (Fla. 4th DCA 2001) (holding that a motion to disqualify based on allegations that a trial judge had shown “animosity and disrespect” for defense counsel was legally sufficient where the motion was supported by an affidavit of defense counsel describing specific instances in which the judge raised his voice and yelled at the attorney in open court).
In summary, the trial court correctly determined that Ramos’s motion for disqualification was legally insufficient because none of the allegations raised in the motion established an objectionably reasonable basis for Ramos to fear the judge was biased. We therefore affirm the trial court’s denial of Ramos’s motion to disqualify the trial judge.

Judgment of Acquittal on Indecent Assault Count

Our standard of review for a motion for judgment of acquittal is de novo. Robinson v. State, 57 So.3d 278, 281 (Fla. 4th DCA 2011). “In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the adverse party that may be fairly and reasonably inferred from the evidence. A court should grant a motion for judgment of acquittal only if the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.” Id. (citation and quotation marks omitted).
Count V of the information alleged that Ramos had committed the crime of indecent assault on the victim on one or more occasions between September 1, 1999 and September 30, 1999. But, there “was insufficient evidence to show the commission of [an indecent assault] during the period encompassed” by count V. See Estey v. *1283 State, 751 So.2d 194, 195 (Fla. 4th DCA 2000). As such, the trial court erred in denying Ramos’s motion for judgment of acquittal on that count.
Counts V and VI were both based on Ramos allegedly touching the victim’s vaginal area in a lewd or lascivious manner. Count V (indecent assault) alleged that conduct contrary to section 800.04(1) occurred between September 1, 1999 and September 30, 1999. Count VI (lewd or lascivious molestation) alleged that conduct contrary to section 800.04(5)(a) and (b) occurred between October 1, 1999 and May 13, 2003. The Florida Legislature amended section 800.04 effective October 1, 1999 such that the crime of “indecent assault” was removed and the crime of “lewd or lascivious molestation” was added. Compare § 800.04(1), Fla. Stat. (1998); with § 800.04(5), Fla. Stat. (1999). Both statutes criminalize Ramos’s alleged conduct.
In Gamble v. State, 870 So.2d 110 (Fla. 2d DCA 2003), the Second District reversed one of two convictions where the state charged the defendant under both section 800.04(1), Florida Statutes (1998), for conduct that occurred before October 1, 1999, and under section 800.04(5)(b) for conduct that occurred between October 1, 1999 and March 30, 2000. Id. at 110-11. The court recognized that in child molestation and sexual abuse cases, there will often be vagueness with respect to the actual dates in which the crimes occurred. Id. at 111. The law will permit such vagueness for a general allegation (i.e., a single count covering a period in which one or more incidents of illegal activity is alleged to have occurred), but that “greater specificity is required as a foundation for individual counts.” Id.
The victim in this case testified that Ramos constantly sexually molested and battered her from the time she was in third grade until just before her twelfth birthday. She testified that the first inappropriate touching occurred sometime after her third grade school year had begun. During cross examination, she acknowledged that she did not remember exact dates and that it was the state that selected September 1, 1999 as the first possible date on which the indecent assault occurred. She testified that she recalled the abuse began after her sister’s godmother’s baby shower, but the state introduced no evidence as to when that baby shower occurred. This evidence was insufficient to convict Ramos of indecent assault during the time period alleged in count V. See Gamble, 870 So.2d at 111. As such, the trial court should have granted Ramos’s motion for judgment of acquittal on that count.

Conclusion

We find that the trial court did not abuse its discretion in denying Ramos’s motion for a continuance. We also affirm the trial court’s finding that Ramos’s motion for disqualification was legally insufficient. We agree with Ramos, however, that the evidence at trial was insufficient to prove the commission of an indecent assault during the period alleged in the information. We therefore reverse Ramos’s conviction for indecent assault and remand with instructions to vacate the conviction and sentence for that count only. We affirm Ramos’s remaining convictions and sentences.

Affirmed in part; reversed in part and remanded with instructions.

MAY, C.J., and STEVENSON, J., concur.

. The record indicates that the trial court entered an order substituting defense as counsel of record on August 20, 2009. The previous attorney’s motion to withdraw indicated that defense counsel was hired around July 10, 2009. The trial was scheduled for October 19, 2009.