MAKAR, J.
The United States Supreme Court recently reminded us that the Sixth Amendment right to counsel “commands, not that a trial be fair, but that a particular guaran *238 tee of fairness be provided-to wit, that the accused be defended by the counsel he believes to be best.” U.S. v. Gonzalez-Lopez, 548 U.S. 140, 146, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); see also Strickland v. Washington, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause.”).[1] Justice Scalia, for the Court in Gonzalez-Lopez, stated that “an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him.” 548 U.S. at 144, 126 S.Ct. 2557. At issue in this case is whether the denial of a second continuance of trial, sought for the purpose of replacing existing private counsel with new counsel, violated the defendant’s constitutional right to the attorney of his own choosing. We hold that it did under the circumstances presented and reverse.[2]
I.
On December 31, 2009, James Madison, an eighteen year-old with no prior criminal record, was charged with armed robbery with a firearm and attempted armed robbery with a firearm arising out of two incidents on the evening of December 6, 2009. Shortly after his arrest, Madison was appointed a public defender; a month later, in January of 2010, his family hired private counsel who was substituted for the public defender. The record shows that neither the public defender nor the initial private counsel did any significant work on Madison’s case during the brief times they were counsels of record; two continuances of pre-trial conferences occurred during this time period.
A few months later, in May 2010, Madison’s family retained new private counsel. Other than a waiver of Madison’s right to speedy trial and a continuance of trial, the record reflects little activity on Madison’s case[3] from the time she became counsel of record until slightly less than a month prior to the trial date, when Madison sent a letter dated February 2, 2011, to the trial judge. His handwritten letter expressed his dissatisfaction with current counsel:
Dear your honorable [judge] ... my name is James C. Madison I am a defendant in your courtroom. I am writing you to ask for a continuation of my trial due to my dissatisfication with my current lawyer. Your honour I am very unhappy with my lawyers preformances on my current case(s). If I continue to allow her to represent me, in my honest opionion, I will spend half my life in prison due to her poor performances. Some of the issues I have with her is that it is very difficult contacting her *239 and she has failed to file motions I have requested. She always speaks negitive about my situation, she shows up late to my court dates, does not have confidence in herself as my lawyer, barely comes to viste me to inform me of what is coming up and she has also misinformed me of what I am going to trial for. Your honour I am seeking another lawyer immediatley and I apoligize for the last minute change. I understand my trial is less than a month away but I am only trying to secure a fighting chance.
Respectfully sumimited
/s/ James C. Madison
In addition to Madison’s letter, the trial court received a lengthy letter from Mr. Madison, his father,[4] discussing the history of the case, his concerns about Madison’s counsel, as well as other matters (most of which would be improper ex parte communications).
Over two weeks later, on February 17, 2011, the trial court[5] held a hearing on Madison’s motion — eight days before trial. The attorney Madison was seeking to discharge appeared and was first to speak. She defended her actions in the case, noting that on the previous day she had for the first time taken depositions of one of the two victims and the law enforcement officers. She had yet to take the deposition of the other victim (who spoke only Spanish), the only witness who could connect Madison with the crime; she had also not yet found an interpreter for this deposition. She told the trial court that she intended to file a written motion to suppress an alleged confession by Madison but had not yet done so, indicating that replacement counsel would be in a position to do so.
After allowing Madison’s current counsel to speak, the trial court expressed concern that the case had “been set for trial for a while now” and initially asked Madison why he wanted a continuance. The judge interrupted him, however, and then focused almost exclusively on Madison’s ability to pay for replacement counsel and his identity. The trial court then passed over the motion to hear unrelated matters, saying “this case is fairly old and we can’t keep continuing it[.]”
After taking up the matter again, the trial court asked Madison’s father essentially one question: whether replacement counsel had been retained. Mr. Madison explained that replacement counsel had agreed to take Madison’s case if the continuance was granted; replacement counsel did not file the motion for continuance or make an appearance because “he did not want to step on another lawyer’s toes so to speak.”[6]
The prosecutor spoke next. Though recognizing the underlying incident occurred in December 2009, she erroneously told the trial court the case was “nearly three years old” when it was a little over a year old. She said the “State is ready to go” but did not elaborate on any prejudice that would result from a continuance. She asserted the case was “very straightforward” and that the “victims have a right to *240 speedy resolution just as much as the defense.” She said the State had been “more than accommodating with continuances” (apparently referring to the continuances of pre-trial conferences and the one continuance of trial).
After the prosecutor finished speaking, and as the trial court was preparing to rule, Madison’s counsel asked to “put one thing on the record.” The trial judge allowed her to speak, saying “we need to move this case_Okay. But go ahead.” At that point, counsel disclosed that she had recently learned that she had represented children of one of the victims in a prior case, but felt it would not be a conflict of interest. The trial court made no inquiry about the conflict issue.[7]
The trial court then denied the continuance (“We’re going to leave it set for trial”). She again said “we need to move on this ease” at which point Madison interjected, “Your Honor ... can I say something?” The trial court allowed Madison to speak:
I’m just — I’m—I’m only going to ask for a continuance. I’m just trying to make sure that I have like a fair trial, you know, because it’s not — my case is not straight up. It’s got a lot of flaws. And I’m trying to get my — I’m trying to get my lawyer to see that. That’s why—
It interrupted, however, to admonish Madison that “You’ve had four — you’ve had four lawyers in this case, Mr. Madison. This would be your fourth lawyer.... And this case is set for trial. It’s 400 days old. [Current counsel] is a very competent lawyer who’s been representing you throughout this process.” The trial court then confirmed that it would be a “one day” trial and concluded the hearing; it made no explicit factual findings in writing or otherwise.
Absent the continuance, Madison proceeded to trial with the lawyer he did not want. She presented no case-in-chief and never filed a written motion to suppress; instead, she raised an ore terms motion during trial that was denied. Madison was convicted and sentenced to a mandatory minimum twenty-year prison term.[8]
II.
Madison raises four issues. We discuss only the first: whether the trial court deprived him of his Sixth Amendment right to counsel of his choice in denying a second continuance to replace existing counsel.[9]
Our review of the trial court’s denial of Madison’s motion for continuance is under the deferential abuse of discretion standard. Brown v. State, 942 So.2d 12, 14 (Fla. 1st DCA 2006); see also Ungar v. Sarafite, 376 U.S. 575, 589-90, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Review is contextual, very much dependent on the “circumstances” presented in each case. Gordon v. State, 48 So.3d 1021, 1022 (Fla. 1st DCA 2010) (reversing denial of continuance for trial to substitute counsel in criminal case). In cases where a constitutional right — such as the assistance of counsel under the Sixth Amendment — is at issue, the Florida Supreme Court has indi *241 cated that a bifurcated standard of review applies whereby factual findings are accorded great deference while legal conclusions are not. Stephens v. State, 748 So.2d 1028, 1031-32 (Fla.1999). As to the former, the Court noted the importance of deference to a trial court’s factual findings, which in Stephens comprised a number of pages of “detailed” findings of fact. Id. at 1031-32, 1034-35. The Court cautioned, however, that this ordinarily deferential standard of review does not abdicate an “appellate court’s obligation to independently review mixed questions of fact and law of constitutional magnitude” to “ensure that the law is applied uniformly in decisions based on similar facts and that the defendant’s representation is within constitutionally acceptable parameters.” Id. at 1034. This obligation, which the court characterized as “an extremely important appellate principle,” is “especially critical because the Sixth Amendment right to assistance of counsel is predicated on the assumption that counsel “plays the role necessary to ensure that the trial is fair.” Id. (quoting Strickland, 466 U.S. at 685, 104 S.Ct. 2052).[10]
Our scope of review is addressed in this Court’s decision in McKay v. State, 504 So.2d 1280, 1282 (Fla. 1st DCA 1986), where we recognized that the trial court’s discretion to manage its caseload creates tension with the Sixth Amendment right to counsel, which “is not absolute but at some point must bend before countervailing interests involving the effective administration of the courts.” The analysis in McKay was in the context of a request for continuance on the “eve of trial” to secure alternative private counsel of the defendant’s choice. Id. Here, we are not dealing with a continuance on the “eve of trial” as that phrase has been used in other cases, such as the day of trial, see Ungar, 376 U.S. at 590, 84 S.Ct. 841; Bowman v. United States, 409 F.2d 225, 226 (5th Cir.1969), or a few days before trial, see Hurtado v. State, 760 So.2d 279, 280 (Fla. 4th DCA 2000). Cf. Brown, 942 So.2d at 13-14 (defendant filed a series of four motions for continuance beginning two weeks prior to date of trial). Instead, we are presented with a motion made three weeks before trial.
Even so, McKay applies, timeliness being among the seven factors that we, and by implication a trial court, must consider in balancing the interests at stake:
(1) time available for preparation,
(2) likelihood of prejudice from the denial,
(3) defendant’s role in shortening preparation time,
(4) complexity of the case,
*242 (5) availability of discovery,
(6) adequacy of counsel actually provided, and
(7) skill and experience of chosen counsel and his pre-retention experience with either the defendant or the alleged crime.
McKay, 504 So.2d at 1282; Brown, 942 So.2d at 14 (appellate court “must” consider these factors in reviewing denial of a continuance). Our sibling courts have adopted or applied the McKay factors[11] as well as other factors such as whether (1) the defendant’s request was made in bad faith or for the purpose of delay, (2) the State’s case would be prejudiced by a continuance, or (3) the trial court’s schedule would not permit a continuance. See, e.g., Jackson v. State, 979 So.2d 442, 445 (Fla. 4th DCA 2008). We view these latter factors as subsumed within the McKay factors.
At the outset, we note that the trial court did not consider each of the McKay factors; but it should have, even if pressed for time. Brown v. State, 66 So.3d 1046, 1048-49 (Fla. 4th DCA 2011) (“While the trial court appeared frustrated by the defendant’s last minute request, it was incumbent on the court to review the criteria before denying the motion simply to move the case to trial.”). We do not suggest that counsel and the trial court must engage in an elaborate discussion of caselaw; instead, a trial court’s exercise of discretion need only be based on consideration of the McKay factors. Brown, 942 So.2d at 14 (“Neither party specifically argued McKay nor any other cases during the motion hearings; however, the factors listed in McKay were essentially argued before the court.”). Absent application of or findings related to these factors, a trial court’s order is more likely to be subject to reversal. See Jackson, 979 So.2d at 445 (reversing denial of continuance where trial court made no findings regarding whether request was in bad faith or for delay, whether State would suffer prejudice from delay, or whether trial court’s schedule would not allow for a continuance).
In this regard, the trial court understood it was not conducting a Nelson hearing,[12] but its focus nonetheless was essentially limited to the factors relevant in such an inquiry: the quality of counsel’s representation and trial preparation issues. Jackson, 979 So.2d at 445 (“Here, the trial court’s findings and the discussion preceding them on the discharge of counsel issue were done in a Nelson context and therefore focused solely on the quality of counsel’s representation and preparedness for trial.”). This focus was too narrow; the broader inquiry and balancing of factors outlined in McKay was required. As the Fourth District in Jackson noted: “In cases such as the present, where Nelson is not applicable, the appropriate focus is on balancing the defendant’s right to discharge his attorney and obtain another against the court’s interest in judicial ad *243 ministration and avoiding unreasonable delay.” Id. at 444.
We stop short of reversing simply because the trial court did not consider the McKay factors. Reversal on this basis may be warranted because a trial judge who fails to do so cannot be said to have properly exercised discretion; stated differently, it would be unreasonable for a judge to pass judgment on a motion for continuance without having considered the required factors. See Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980) (“Where a trial judge fails to apply the correct legal rule ... the action is erroneous as a matter of law. This is not an abuse of discretion. The appellate court in reviewing such a situation is correcting an erroneous application of a known rule of law.”). We choose to review the extent to which the McKay factors are reflected in the record, however, leaving for another day whether a more rigid approach is warranted. See Brown, 942 So.2d at 14.
The first factor (the “time available for preparation”) is related to the third (the “defendant’s role in shortening preparation time”), both collectively focusing on the age of the case and the extent to which a defendant has caused unnecessary delay. As to these factors, the central precept of the trial court was that because Madison’s case was “fairly old” it should not be continued. While this view may be an acceptable starting point where, for example, a case has languished due to a defendant’s dilatory tactics, there is no indication that was Madison’s motivation. The unrebut-ted evidence shows that Madison — and his father — were both genuinely concerned that Madison would not receive a fair trial given their perceived shortcomings of existing counsel. No evidence suggests anything other than good faith motives on their part; the State makes no argument to the contrary. Of course, an accused may not manipulate the system and obstruct the progress towards trial by repeatedly seeking continuances to replace counsel; but that is not the case here. Cf. Lawson v. State, 884 So.2d 540, 546 (Fla. 4th DCA 2004) (defendant’s request for continuance to represent himself and discharge effective counsel denied where “case had been pending for nearly four years at the time of trial” and defendant “manipulate^ the judicial system”).
While it is technically true that Madison was seeking a continuance to add what would be his fourth lead attorney in the ease, the record shows that the first two served only very briefly; the third served for a number of months but accomplished little until shortly before the scheduled trial date and only after Madison had filed his motion to replace her. As to delay, the State and Madison’s counsels jointly had agreed to continuances of pre-trial conferences, as well as the continuance of the December 21, 2010 trial date to February 21, 2011. These agreed-upon postponements of the trial process, even if chargeable primarily to Madison, do not weigh heavily against him under the circumstances. Instead, the genuineness of his good faith concerns about his counsel, and the lack of any evidence that he sought the second continuance of trial solely for delay, tip solidly in his favor.
Turning to the second factor, the “likelihood of prejudice from the denial” of a continuance, the record shows no prejudice to the State from a continuance. The State said it was “ready to go” but did not describe any prejudice that a continuance would cause. The State was far from the mark in describing the case as over three years old; were it that old, we would have greater concern for the timely administration of justice. The prosecutor commendably noted that victims have an interest in the timely resolution of criminal cases; in *244 deed, our state constitution states that “[victims of crime ... are entitled to the right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings, to the extent that these rights do not interfere with the constitutional rights of the accused.” Art. I, § 16(b), Fla. Const. But again, no specific prejudice was suggested.
Tellingly, nothing in the record shows that the trial court’s schedule was so crowded or inflexible that it could not accommodate a short continuance for a one day trial. Instead, Madison’s case— though one of the oldest on the trial court’s docket — was one of many set for trial on the court’s docket for the week of February 21, 2011.[13] In this regard, the United States Supreme Court in Gonzalez-Lopez recognized that a criminal defendant’s Sixth Amendment right is subject to the trial court’s “wide latitude in balancing the right to counsel of choice against the needs of fairness ... and against the demands of its calendar.” 548 U.S. at 152, 126 S.Ct. 2557. While it is proper, indeed important, for trial courts to consider case management when ruling on motions for continuances, neither the needs of fairness nor the demands of the trial court’s calendar weighed against granting a limited continuance of a one day trial given this record. On appeal, the State suggests the trial court implicitly determined that it would be inconvenient to reset a trial date; the court made no explicit or implicit finding of inconvenience, however. Moreover, no support exists in the record that the trial court was unable to accommodate a new trial date or that the State would have been prejudiced by a continuance. The State also suggests on appeal that evidence and witness memory inherently degrade over time, but these factors are present in every case; and no mention was made at the hearing about any witness or evidence that formed a specific concern of the State.
As to prejudice to Madison, the record establishes that he demonstrated a genuine concern — from his perspective — regarding his current counsel’s performance. His handwritten letter said it was difficult to contact her, that she failed to file motions as promised, that she shows up late to court, and that she misinformed him about trial matters; his father’s letter expressed similar sentiments. The prosecutor presented nothing to counter these concerns, and the trial court made no inquiry into, or findings regarding, these matters.[14] This can be an awkward inquiry for a trial judge to make, particularly with the lawyer-sought-to-be-replaced present, but it must be done. It is no more awkward than the discomfort that Madison as a pro se movant must have felt in displaying his dissatisfaction, in writing and then in person with his current lawyer *245 present; it is certainly less awkward than the discomfort that Madison must have felt at his trial, represented by an attorney in whom he had lost confidence.
Given Madison’s concerns, the obvious prejudice to him was having the defense of his liberty in the hands of a lawyer he felt was inadequate. Brown, 66 So.3d at 1049 (“The likelihood of prejudice is great. Without a doubt the defendant did not think his counsel was adequate.”). Indeed, some of Madison’s fears appear to have been realized: his counsel did not file a written suppression motion prior to trial and put on no case-in-chief at trial. We need not ruminate on whether these inac-tions were strategic or harmless because we find the potential for prejudice existed under the circumstances.
As for the fourth and fifth factors, complexity of the case and the availability of discovery, this case — though not as complex as others — hinged upon a victim/witness who had not yet been deposed and a confession that had yet to be challenged. The prosecutor claimed, without elaboration, that the case was “very straightforward”; critical discovery was lacking with days left before trial. On balance, the case lacks the complexity of others where continuances were granted, see, e.g., Trocola, 867 So.2d at 1231 (involving “multiple counties and multiple law enforcement agencies”), and the availability of discovery appears to be a modest concern. These factors overall neither support nor detract from Madison’s request.
Finally, only brief mention was made at the hearing as to the sixth and seventh factors — adequacy of Madison’s current counsel and the skill and experience of his replacement counsel. After denying the continuance, the trial court told Madison that his attorney was a “very competent lawyer”; it made little inquiry other than the name, payment for, and availability of Madison’s proposed replacement counsel.
[[Image here]]
Based on our review of the record, we hold that the trial court erred in denying a continuance of trial under the circumstances. The fact that a prior continuance of trial was granted, just a few months earlier, does not change our view. It is an abuse of discretion to not perform the analysis under McKay even if prior continuances had been granted. Brown, 66 So.3d at 1049 (“Even though prior continuances had been granted, this unique set of circumstances warranted at the very least a full consideration of the facts to determine if a continuance was needed to ensure the defendant’s right to counsel and a fair trial.”). Had the trial court done so, the weight of the McKay factors falls decidedly in Madison’s favor on the record presented.
We do not break new ground in this case, emphasizing again that the State made no showing of any bad faith intent on Madison’s part to delay the proceedings for an improper purpose; no prejudice to the State’s interest was shown; and, the court made no finding that its schedule could not accommodate the requested continuance. These shortfalls alone are enough to justify reversal. See Jackson, 979 So.2d at 445 (“The trial court made no finding that appellant’s request was made in bad faith or for purposes of delay, that the State’s case would suffer prejudice, or that the court’s schedule would not permit a continuance. The record does not support a conclusion that any of these scenarios existed.”). Moreover, the absence of these types of findings distinguishes cases like Miller v. State, 764 So.2d 640 (Fla. 1st DCA 2000), in which this Court affirmed denials of requests for continuances to replace counsel. In Miller, five weeks before trial the defendant moved for a thirty- *246 day continuance to obtain substitute counsel. Id. at 642. The trial court held two hearings where the issue was “thoroughly discussed” and the defendant “was permitted to explain in full his several reasons for seeking to discharge” counsel. Id. The trial court in Miller specifically found the defendant engaged in dilatory tactics and could have hired replacement counsel sooner; the State had argued prejudice due to issues of witness availability. Id. at 643. The facts of Miller are readily distinguishable from those in this case. Unlike in Miller, Madison’s motion was not thoroughly reviewed and Madison was not “permitted to explain in full” his reasons for replacing his existing counsel; nor was a showing made that Madison engaged in “dilatory tactics” in seeking a continuance.
III.
In concluding, we note that the hearing on the motion for continuance was not a model for emulation. It was Madison’s motion, not that of his current legal counsel in whom he had lost confidence. The trial court spent much time on the latter’s viewpoints but little on those of the primary party in interest: Madison. We are sympathetic to the trial court’s motivation to keep cases moving on its docket. As Judge David Monaco of the Fifth District, and a former state trial judge, stated:
Trial courts are under constant pressure to move cases through the criminal justice system. All judges are fully aware that unless cases are efficiently processed, the burden of backlog begins to choke, and unwanted delays multiply exponentially. One of our primary functions, however, is to make sure that trials are fair. We cannot lose sight of that laudable goal in the name of expediency.
Trocola, 867 So.2d at 1232. Trial docket efficiency is important, but nothing in this case suggests that Madison’s motion was other than a genuine, good faith request that could have been accommodated without prejudice to all involved.
Having determined that Madison’s right to counsel of his choice was impeded, we are required to reverse. Gonzalez-Lopez, 548 U.S. at 150, 126 S.Ct. 2557. Reversal is compelled because the “[djeprivation of the right is ‘complete’ when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.” Id. at 148, 126 S.Ct. 2557. Appellant’s conviction and sentence are REVERSED and the case is REMANDED for a new trial.
CLARK, J., concurs. WETHERELL, J., dissents with opinion.

. Amend. VI, U.S. Const. ("In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence.”). Similarly, the Counsel Clause of our state constitution has been interpreted to include "the right to choose one's manner of representation against criminal charges,” which "necessarily entails two corresponding rights — the right to conduct one's own defense and the right to assistance of counsel.” Traylor v. State, 596 So.2d 957, 968 & n. 23 (Fla.1992) (interpreting article I, section 16(b), of the Florida Constitution, which states: "In all criminal prosecutions the accused shall, upon demand, ... have the right ... to be heard in person, by counsel or both ...”).

. In Gonzalez-Lopez, the Court held that a violation of the Counsel Clause is a structural error that requires reversal of the conviction; harmless error analysis does not apply. 548 U.S. at 150, 126 S.Ct. 2557.

. A trial continuance was entered on November 24, 2010; this reset the December 21, 2010 trial date to February 21, 2011.

. We distinguish between Madison, the son, by referring to his father as Mr. Madison.

. Circuit Judge Angela Dempsey presided over the trial, but not the hearing on Madison’s motion.

. The trial court made no mention of Mr. Madison’s letter, which claimed that counsel initially made contact with Madison and his family "at least twice a week” but that her contact soon became meager to the point that "her visit with James was far and few in between. We continued to call her asking her to visit our son and keep us informed on the status of James’ case with no response.”

. Counsel said she "had talked to Mr. Madison about” the conflict, but the record does not reflect whether "Mr. Madison” was Appellant or his father.

. He was found guilty on both of the original charges as well as a third charge, added in an amended information dated February 14, 2011, of possession of an illegal weapon.

.Because a new trial is in order, we do not pass upon the question of whether Madison’s confession was inadmissible. We note, however, that the State commendably concedes error as to the issues related to the entitlement to jail credit and the imposition of lump-sum fines and costs.

. We recognize the frustration of Judge Wetherell in trying to deconstruct and harmonize the overall logic of a one-size-fits-all standard of review, which appellate commentators have recognized and attempted to rationalize and explain over the years. See, e.g., Laura Whitmore, Abuse of Discretion: Misunderstanding the Deference Accorded Trial Court Rulings, 79 Fla. B.J. 83 (June 2005) (focusing on the "gross abuse of discretion" versus "abuse of discretion” conundrum); Nancy Ryan, Containing Canakaris: Tailoring Florida's One-Size-Fits-Most Standard of Review, 78 Fla. B.J. 40 (April 2004) (explaining how Canakaris’s progeny has evolved and, in cases involving constitutional issues, resulted in a bifurcated standard of review). We find comfort in our application of the standard of review by relying only on cases that involved continuances of criminal trials or the constitutional right of counsel, excepting only Cana-karis which outlined the parameters of the bifurcated standard of review. See Whitmore, supra, at 83 (noting that courts temper "abuse of discretion” standard "by the nature of the issue on appeal” and that "it is the underlying policies associated with the specific legal issues, not the verbiage of the standard of review that apportions power over the finality of judgments between trial and appellate courts”).

. M.F. v. State, 920 So.2d 1252, 1254 (Fla. 2d DCA 2006) (applying McKay factors); Trocola v. State, 867 So.2d 1229, 1231 (Fla. 5th DCA 2004) ("While not intending to imply that this list [from McKay ] is exclusive, we agree that the factors are fair, well-considered and reasonable, and provide a sound basis to evaluate the present case.”); D.N. v. State, 855 So.2d 258, 260 (Fla. 4th DCA 2003) (applying McKay factors).

. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973); see generally Angela D. McCravy, Self-Representation and Ineffective Assistance of Counsel: How Trial Judges Can Find Their Way Through the Convoluted Legacy of Faretta and Nelson, 71 Fla. B.J. 44 (Oct. 1997) (discussing Nelson and the type of hearing conducted when court-appointed counsel is claimed to be ineffective).

. Madison’s counsel represented to the trial court that the prosecutor had told her that Madison's case "was a backup anyway”— meaning it was not at the top of the queue and might not even be tried during the week for which it was set. The prosecutor, however, offered no hint of flexibility in rescheduling (until after the trial court denied the continuance, when the prosecutor offered to "bump” Madison's case closer to the front of the line).

. The trial court also made no inquiry into the disclosure at the hearing by Madison’s counsel — apparently for the first time — of a potential conflict of interest with her representing Madison; it should have done so due to the potential prejudice to Madison and to enable appellate review of the issue. Brown, 66 So.3d at 1049 (noting "we are unable to discern from this record precisely what legal problem his counsel faced and how they would impact his effectiveness at trial. We cannot tell how long the defendant was aware of the issue and whether there was any delay in raising the issue. The likelihood of prejudice is great”).