IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ARTHUR SLINGER,

      Appellant,

 v.                                    Case No.  5D16-1874

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed May 5, 2017

Appeal from the Circuit Court for
Citrus County,
Richard A. Howard, Judge.
Victor J. Musleh, Senior Judge.

James S. Purdy, Public Defender, and
Brittany N. O'Neil, Assistant Public
Defender, Daytona Beach, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Kellie A. Nielan, Assistant
Attorney General, Daytona Beach, for
Appellee.

COHEN, C.J.

Arthur Slinger appeals his convictions and sentences, following a jury trial, on three

counts: 1) sexual battery; 2) lewd or lascivious molestation of a child between the ages

of twelve and sixteen; and 3) lewd or lascivious battery of a child between the ages of

twelve and sixteen. The State alleged that Slinger both fondled and performed oral sex

upon a twelve-year-old boy. On appeal, Slinger argues that the trial court erred in failing

to conduct an adequate Faretta[1] inquiry into whether his waiver of his Sixth Amendment[2] right to representation was knowing and voluntary. We agree, reverse Slinger's convictions, and remand for further proceedings.

In addition to guaranteeing an accused person representation by appointed counsel, the Sixth Amendment protects a defendant's right to represent himself or herself. Faretta v. California, 422 U.S. 806, 807 (1975). The purpose of a Faretta inquiry is to determine whether a defendant knowingly and intelligently waives the right to counsel and asserts the right to self-representation. Id. at 835; see also Fla. R. Crim. P. 3.111(d)(2)–(3). In making that determination, no specific language is required, but the Florida Supreme Court has provided guidelines for courts to utilize. See, e.g., Amend. to Fla. R. Crim. P. 3.111(d)(2)–(3), 719 So. 2d 873, 876–80 (Fla. 1998) (setting out model inquiry); see also Fitzpatrick v. Wainwright, 800 F.2d 1057, 1064–68 (11th Cir. 1986) (laying out factors to consider in assessing a Faretta inquiry).

The trial court's handling of the defendant's right to self-representation is reviewed for an abuse of discretion. McCray v. State, 71 So. 3d 848, 864 (Fla. 2011) (quoting Aquirre-Jarquin v. State, 9 So. 3d 593, 602 (Fla. 2009)). Failure to conduct a Faretta inquiry when the defendant makes an unequivocal invocation of his right to self-representation is per se reversible error. Id. "The ultimate test is not the trial court's express advice, but rather the defendant's understanding." Fitzpatrick, 800 F.2d at 1065.

---

[1] Faretta v. California, 422 U.S. 806 (1975) (recognizing a constitutional right for a defendant to present his own defense).

[2] Amend. VI, U.S. Const. The Sixth Amendment guarantee of self-representation applies to the states through the Fourteenth Amendment's guarantee of due process. Pointer v. Texas, 380 U.S. 400, 403 (1965).

During a pretrial status conference, Slinger requested a hearing on his previously filed motion to discharge his public defender. The trial court then began what was ostensibly a Nelson[3] hearing to determine whether Slinger's appointed counsel was ineffective. From the start, however, the inquiry blurred the line between a Faretta hearing and a Nelson hearing, despite procedurally important distinctions between the two.[4] The court began by asking several questions about Slinger's age, education, work history, and prior legal experience—questions that should have been part of the Faretta inquiry. The court then asked questions related to the Nelson inquiry and heard arguments by Slinger and his counsel. The court found that Slinger's counsel was not rendering ineffective assistance. Slinger, in response to the court's questioning, indicated that he wished to represent himself.

The court then proceeded to conduct a Faretta inquiry. The inquiry itself, however, lasted a mere three pages of the transcript.[5] Cf. State v. Bowen, 698 So. 2d 248, 251 (Fla. 1997). The court did not ask about Slinger's history of mental or emotional illness,

---

[3] Nelson v. State, 274 So. 2d 256, 258–59 (Fla. 4th DCA 1973), approved by Hardwick v. State, 521 So. 2d 1071, 1074–75 (Fla. 1988) (establishing procedure for discharging appointed counsel for ineffectiveness and substituting new counsel).

[4] We are sympathetic to the challenges trial courts face in ruling on inarticulate motions from inexperienced litigants without the benefit of hindsight. We only point out the trial court's conflation of the Nelson/Faretta issues because we believe that if courts pay close attention to the separate inquiries and proceed in a methodical fashion, errors such as this one are more likely to be avoided. Cf. Jones v. State, 658 So. 2d 122, 126–29 (Fla. 2d DCA 1995) (Altenbernd, J., concurring) (noting the complexity of combined Nelson/Faretta hearings and recommending a mechanical approach).

[5] In fairness to the court, portions of the initial Nelson hearing were relevant to the Faretta inquiry as well. We have considered the totality of both inquiries, but even after considering the initial section of the proceedings dedicated to determining Slinger's background, we find that the inquiry was insufficient.

nor did it discuss the maximum possible sentence or the nature and complexity of the case. See Jones, 658 So. 2d at 128 (Altenbernd, J., concurring). The court asked Slinger one question about his knowledge of legal proceedings—whether he was aware of the interrogative methods on direct and cross examination—but did not address the issue of jury selection. Cf. id. The court warned Slinger that he would be expected to follow the same rules of procedure as any attorney, but it did not point out that Slinger, as opposed to an appointed attorney, would have diminished access to legal materials and limited ability to contact witnesses while in jail. See McGirth v. State, 209 So. 3d 1146, 1157 (Fla. 2017) (noting that the Faretta inquiry requires the court to state that the defendant's "access to legal resources will be limited while in custody"). Finally, the court failed to state on the record the reasons for its determination that Slinger had knowingly and voluntarily waived his right to counsel. Cf. Jones, 658 So. 2d at 128–29.

We find this Faretta inquiry inadequate. While we acknowledge that there are no magic words for the court to use in conducting the exchange, the deficiencies in this inquiry make it impossible for us to determine if Slinger made a knowing waiver of his right to counsel. See Fitzpatrick, 800 F.2d at 1065. Although the trial court referenced the seriousness of the charges, the court did not explain the maximum penalties that Slinger faced. Most importantly, the court's explanation of the challenges of self-representation did not adequately explain the disadvantages.[6] Without establishing that Slinger was aware of the many disadvantages of self-representation or the possible penalties he faced, it is impossible to say that his waiver was knowing. Accordingly, we find that the

---

[6] At the request of stand-by counsel, Judge Musleh, who was tasked with presiding over the trial, conducted a more truncated Faretta inquiry. Unfortunately, it did not alleviate the inadequacies of the earlier inquiry.

4

court abused its discretion in accepting Slinger's waiver of his Sixth Amendment right to counsel. We reverse and remand for further proceedings.[7]

REVERSED and REMANDED.

PALMER and BERGER, JJ., concur.

---

[7] Because we reverse Slinger's convictions, we need not address his argument that dual convictions for lewd or lascivious molestation and lewd or lascivious battery violate his constitutional protection from double jeopardy.