# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

RUDY TAVION JORDAN,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-1440

_____

March 25, 2026

Appeal from the Circuit Court for Hillsborough County; Kimberly K. Fernandez, Judge.

Blair Allen, Public Defender, and Megan Olson, Assistant Public Defender, Bartow; and Joanna Beth Conner, Assistant Public Defender, Bartow (substituted as counsel of record), for Appellant.

Rudy Jordan, pro se.

James Uthmeier, Attorney General, Tallahassee, and Clara V. Murga, Assistant Attorney General, Tampa, for Appellee.

BLACK, Judge.

Rudy Tavion Jordan appeals from his judgment and sentences for possession of a controlled substance, in violation of section 893.13(6)(a), Florida Statutes (2022), and fleeing and attempting to elude a law

enforcement officer, in violation of section 316.1935(1), Florida Statutes (2022).  He was convicted following a jury trial and sentenced to four years in prison on each count, concurrent.  Because the trial court erred in denying Jordan a continuance upon retaining private counsel and in failing to subsequently conduct a *Faretta*[1] inquiry, we reverse.

Jordan was charged with possession and fleeing and attempting to elude in June 2023.  Shortly after the information was filed, Jordan retained private counsel.  Private counsel represented Jordan in multiple pending cases until he moved to withdraw on December 5, 2023, because, among other reasons, Jordan had been charged with new offenses and his bond had been revoked, making it impossible for Jordan to continue to pay private counsel.  The public defender was then appointed to represent Jordan.

The record establishes that on December 11, 2023, the court set a trial date of June 4, 2024.  On January 12, 2024, Jordan filed a pro se motion for a *Nelson*[2] and *Faretta* hearing and a motion to discharge his attorney, the public defender.  The record does not reflect a ruling on either motion.

After the filing of the pro se motions, Jordan retained new private counsel; counsel filed a notice of appearance on May 8, 2024.  At a pretrial hearing on May 28, 2024, private defense counsel appeared on Jordan's behalf.  Private counsel advised the court that she was not ready for trial in the case, specifying that discovery and depositions remained outstanding.  Jordan's public defender, also present for the pretrial hearing, advised that while private counsel had filed a notice of appearance in the case, the public defender "was aware of the [c]ourt's

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

[2] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

2

procedure on when it was filed, and that likely [the public defender] would continue to keep th[e] case." After Jordan stated that he had private counsel, the court explained, "[U]nless [private counsel] is going to tell me she can be ready for trial on th[e] case next week, I'm going to have [the public defender] continue to represent you." The court then recited an inaccurate history of the case, stating that the trial had been continued multiple times and that Jordan had waited eleven months to retain counsel. There is no explanation as to the court's procedure or why the public defender would likely continue representing Jordan despite his having retained private counsel who had filed a notice of appearance, witness list, and other documents in the case.

Jordan advised the court that he had a motion to suppress and motion to dismiss that he wanted to be heard but the public defender would not adopt them and that he was "willing to go pro se in order to" have the motions heard. The court stated that Jordan could represent himself but that the trial would not be continued. Jordan then told the court that he did not feel he was ready for trial and that he felt that he was being forced to trial.

The court asked Jordan—not counsel—whether he wanted witnesses identified in private counsel's witness list to testify at the trial. Jordan reiterated that he did not wish to have the public defender represent him and that he was not otherwise prepared for trial. The court responded: "You've told me four times. Your position is clear for the appellate record. Your position is clear that—that [the public defender] is ready to go to trial. *You're choosing not to go to trial with her.*" (Emphasis added.) Ultimately, despite the court's awareness that Jordan did not wish to have the public defender represent him and wanted to represent himself, that witnesses provided by private counsel

3

had not previously been deposed, and that the public defender was unwilling to adopt Jordan's motion to suppress, neither a *Faretta* inquiry nor a *Nelson* hearing was held.  The court did direct that Jordan was to be brought over the next morning to conduct a *Faretta* inquiry.

That inquiry did not occur.  The next morning the court asked about the motions that Jordan believed needed to be adopted, filed, and set for hearing.  Jordan reiterated that he needed depositions done and motions to be heard and that because the public defender was not doing those things, he wanted to proceed pro se: "And I—the reason I want to go pro se is because I clearly have—like they're not representing me." Without conducting a *Faretta* inquiry, the court proceeded to ask Jordan about the legal basis for the search that resulted in the possession charge and whether he had case law to support his position.  After the court stated that it would hear Jordan's pro se motion to suppress on the morning of trial and that witnesses would testify concerning the suppression issues, all of which was directed to Jordan and not the public defender, the court stated: "I still think that you ought to have [the public defender] represent you so that she can help you in asking any questions.  Do you still want her to represent you, or do you want to represent yourself?"  Jordan replied: "Yes, I—I would like her help.  I mean, I never wanted her to not represent me.  I just wanted her—"  The court stopped him and explained the process for adopting pro se motions and advised Jordan that the court would hear *his* suppression argument on the morning of trial.

Jordan's trial occurred as scheduled, with Jordan represented by the public defender.

On appeal, Jordan argues that the trial court erred in both denying a continuance in order for Jordan to have counsel of his choosing

represent him and in failing to conduct a *Faretta* hearing where Jordan clearly stated he wanted to represent himself and had filed a previous motion so stating.

The trial court's denial of a continuance based on Jordan's retention of private counsel was an abuse of discretion. *See Hill v. State*, 157 So. 3d 481, 482 (Fla. 2d DCA 2015). "The Sixth Amendment of the United States Constitution protects the right of a criminal defendant to be represented by the attorney of his or her own choosing." *Alvarez v. State*, 75 So. 3d 420, 422 (Fla. 4th DCA 2011); *accord Brown v. State*, 38 So. 3d 212, 214 (Fla. 2d DCA 2010). In considering a motion for continuance to retain counsel of defendant's choosing, "the trial court must conduct 'an adequate inquiry into the surrounding circumstances.'" *Valcarcel v. State*, 201 So. 3d 795, 797-98 (Fla. 4th DCA 2016) (quoting *Deal v. State*, 145 So. 3d 212, 214 (Fla. 4th DCA 2014)). Where the motion for continuance involves recently retained counsel, the trial court should consider:

> [(1)] the time available for preparation, [(2)] the likelihood of prejudice from the denial, [(3)] the defendant's role in shortening preparation time, [(4)] the complexity of the case, [(5)] the availability of discovery, [(6)] the adequacy of counsel actually provided[,] and [(7)] the skill and experience of chosen counsel and his pre-retention experience with either the defendant or the alleged crime.

*Santiago v. State*, 395 So. 3d 667, 670 (Fla. 2d DCA 2024) (seventh alteration in original) (quoting *McKay v. State*, 504 So. 2d 1280, 1282 (Fla. 1st DCA 1986)). Consideration of these factors allows the court to balance a defendant's right to be represented by counsel of his choosing with the "countervailing interests involving effective administration of the courts." *McKay*, 504 So. 2d at 1282.

5

It is not apparent that the trial court considered any of the above factors. After referencing an unexplained procedure, a continuance following the retention of privately retained counsel was denied. The court stated that it would not continue the trial because the felony case was a year old and for reasons that are contradicted by facts in the record (that is, that Jordan had waited eleven months to retain counsel and that multiple continuances had been granted). The court erred in denying Jordan's request for a continuance based on retention of counsel of his choice in reliance on an incorrect procedural history, without considering the surrounding circumstances and the relevant factors. *See Perozo v. State*, 356 So. 3d 831, 835 (Fla. 4th DCA 2023) ("We agree with Defendant's argument that this statement indicates that the trial court denied Defendant's request for a continuance based on a general policy, rather than on the circumstances of the case."); *cf. Rasmussen v. State*, 396 So. 3d 889, 890 (Fla. 1st DCA 2024) (affirming judgment and sentence, concluding that trial court did not abuse its discretion in denying motion to continue where "the parties covered and the court considered the appropriate factors from *McKay*").

The court's failure to conduct a *Faretta* inquiry also requires reversal. "[A] defendant need not articulate a reason to invoke his right of self-representation." *Eib v. State*, 191 So. 3d 977, 979 (Fla. 2d DCA 2016) (alteration in original) (quoting *Laramee v. State*, 90 So. 3d 341, 345 (Fla. 5th DCA 2012)). And "[a] defendant who persists in discharging competent counsel after being informed that he is not entitled to substitute counsel is presumed to be unequivocally exercising his right of self-representation." *Weaver v. State*, 894 So. 2d 178, 193 (Fla. 2004). "Under *Faretta* and our precedent, once an unequivocal request for self-representation is made, the trial court is obligated to hold a hearing, to

6

determine whether the defendant is knowingly and intelligently waiving his right to court-appointed counsel." *Tennis v. State*, 997 So. 2d 375, 378 (Fla. 2008). "*Faretta* and our rules of criminal procedure place the duty of inquiry upon the trial court," and "[t]he failure of a trial court to make a proper *Faretta* inquiry requires reversal." *Hutchens v. State*, 730 So. 2d 825, 826 (Fla. 2d DCA 1999).

In this case, Jordan made an unequivocal statement that he wanted to represent himself rather than to proceed with the public defender as counsel. That Jordan provided his rationale for exercising his right to proceed pro se does not make his request equivocal. In *Pasha v. State*, 39 So. 3d 1259 (Fla. 2010), the defendant made the following statements to the court pursuant to his request to proceed pro se: "I don't think [appointed counsel] put forth the effort in my situation . . . . But I don't have the choice to pick who I want so it means obvious[ly] the only other alternative is to be pro se." *Id.* at 1260. In holding that the defendant's request to proceed pro se was unequivocal, the supreme court explained that "[t]he fact that Pasha stated to the trial court that he preferred representation by a different attorney is of no consequence. . . . Pasha clearly expressed a desire to proceed pro se in order to avoid proceeding with counsel he found to be unacceptable." *Id.* at 1262. Moreover, in this case the trial court understood Jordan's request to be unequivocal, stating that a *Faretta* inquiry would be held; however, that did not occur. And while "a court may deny an unequivocal demand without a *Faretta* inquiry if, but only if, it finds (with or without regard to timeliness) the demand is designed to delay or disrupt proceedings," *Mosley v. State*, 349 So. 3d 861, 868 (Fla. 2022), no such finding was made nor would that finding have been supported in this case.

7

We note that at the second hearing, after the court made significant inquiry of Jordan regarding his motion to suppress and the facts and law supporting it, Jordan relented and indicated that he would have the public defender represent him.  However, Jordan has the "constitutional right of self-representation," and the rules of criminal procedure

> require[] the trial court to apprise the accused of the dangers and disadvantages of self-representation and to make a thorough inquiry into the accused's mental capacity to knowingly and intelligently waive counsel.  Here, no such inquiry transpired when [Jordan] invoked this constitutional right. . . .  Absent the requisite inquiry, we cannot presume that the waiver of th[e] right [to self-representation] was knowingly and intelligently made.

*See Hutchens*, 730 So. 2d at 826; *cf. Ash v. State*, 422 So. 3d 181, 193 (Fla. 1st DCA 2025) (Winokur, J., dissenting) ("[I]f a defendant unequivocally invokes his right to self-representation and later succumbs to the trial court's interference with that right by withdrawing that invocation, then the withdrawal might constitute a constitutional violation.").  A *Faretta* inquiry was required after Jordan unequivocally stated that he would represent himself.  *See Tennis*, 997 So. 2d at 380.

Reversed and remanded.


KELLY, J., Concurs.
ATKINSON, J., Concurs in result in part and dissents in part.



ATKINSON, Concurring in result in part and dissenting in part.

I concur in the result reached by the majority that Jordan's motion to continue was erroneously denied.  However, I respectfully dissent from

the majority's conclusion that Jordan's Sixth Amendment rights were violated for failure to conduct a *Faretta* inquiry.

The majority relies on a categorical requirement that a trial court make findings when denying a defendant's request for continuance to retain counsel but cites no binding authority in support of such a per se rule. The majority cites the Fourth District's *Valcarcel* decision for the proposition that "[w]hen a trial court considers a defendant's request for continuance to retain counsel of choice, the trial court must conduct 'an adequate inquiry into the surrounding circumstances' and *make 'proper findings to show* that the defendant's constitutional right is not being arbitrarily denied.' " *See Valcarcel v. State*, 201 So. 3d 795, 797–98 (Fla. 4th DCA 2016) (emphasis added) (quoting *Deal v. State*, 145 So. 3d 212, 214 (Fla 4th DCA 2014)). If indeed the opinion in *Valcarcel* can be read to infer a per se finding requirement, such a requirement is not justified by the case on which it relies. In the *Valcarcel* opinion, the Fourth District relied on a previous opinion of that district, *Alvarez v. State*, 75 So. 3d 420 (Fla. 4th DCA 2011), but by omitting material portions of the quoted text of the latter opinion, it arguably obscured the meaning of the latter's rationale. Quoting *Alvarez*, the *Valcarcel* opinion includes the following: "[N]ot every request to substitute counsel on the eve of trial may . . . be denied without inquiry and without the court making proper findings to show that the defendant's constitutional right is not being arbitrarily denied." *Id.* at 798 (alterations in original) (quoting *Alvarez*, 75 So. 3d at 423). While the incomplete quotation from *Alvarez* can be read to imply that some requests for substitution of counsel on the eve of trial may be denied without inquiry and proper findings, the *Valcarcel* opinion leaves open to doubt the question of whether it recognizes a per se rule that findings be made when a trial court denies a request for

9

continuance made for the purpose of procuring counsel of choice. However, in the complete portion of the quoted passage of the *Alvarez* opinion—including that which was omitted in the *Valcarcel* opinion—the court in *Alvarez* was careful to *avoid* establishing a per se rule that findings are required every time a trial judge denies a defendant's motion for continuance to retain counsel:

> While the constitutional right to have counsel of one's own choosing represent a defendant at trial may yield to considerations of the administration of justice, not every request to substitute counsel on the eve of trial may *sufficiently impact those considerations such that a request may* be denied without inquiry and without the court making proper findings to show that the defendant's constitutional right is not being arbitrarily denied.

*Alvarez*, 75 So. 3d at 423 (emphasis added). In *Deal v. State*, 145 So. 3d 212, 214 (Fla 4th DCA 2014), a similar omission is made of salient portions of quoted material from the *Alvarez* opinion in support of an apparently categorical rule that "*any* denial of an accused's request for a continuance to retain counsel of choice must be based on an adequate inquiry into the surrounding circumstances and 'proper findings to show that the defendant's constitutional right is not being arbitrarily denied.' " *See Deal*, 145 So. 3d at 214 (emphasis added) (quoting *Alvarez*, 75 So. 3d at 423). However, when read in full, it is clear that in *Alvarez*, the court was making the point that a defendant's Sixth Amendment right to counsel of choice must be balanced with a court's duty to manage its dockets, and that in some cases, the unique circumstances will justify a trial court's denial of a request for continuance without inquiry and without making findings. *Cf. Madison v. State*, 132 So. 3d 237, 241 (Fla. 1st DCA 2013) ("[T]he trial court's discretion to manage its caseload creates tension with the Sixth Amendment right to counsel, which 'is not absolute but at some point must bend before countervailing interests

10

involving the effective administration of the courts.' " (quoting *McKay v. State*, 504 So. 2d 1280, 1282 (Fla. 1st DCA 1986))).

To the extent that opinions relied upon by the majority do seem to indicate a per se rule that findings be made, *see, e.g.*, *Perozo v. State*, 356 So. 3d 831, 834 (Fla. 4th DCA 2023) ("[A]ny denial of an accused's request for a continuance to retain counsel of choice must be based on . . . 'proper findings to show that the defendant's constitutional right is not being arbitrarily denied.' " (quoting *Deal*, 145 So. 3d at 214)), that decisional authority is not binding on this court. Such a categorical rule is unsupported by statute or any actual rule of criminal procedure. And such a rule would be inadvisable in an area in which trial courts, entitled as always to the presumption of correctness on appeal, are afforded considerable discretion to balance the efficient management of dockets against a criminal defendant's right to his choice of counsel. *See Madison*, 132 So. 3d at 247–48 (Wetherell, J. dissenting) ("The argument on the motion addressed the *McKay* factors . . . and . . . it is reasonable and appropriate for us to assume that the court considered these factors in ruling on the motion . . . . The presumption of correctness that the trial court's ruling is supposed to be afforded on appeal requires us to infer that the court properly considered all of the circumstances presented at the hearing on Appellant's motion for a continuance in ruling on the motion."); *cf. McKay*, 504 So. 2d at 1282 ("Thus, when a defendant asks for a continuance on the eve of trial in order to allow time for recently retained counsel to prepare, the court must balance that request against many other factors, such as those outlined in *U.S. v. Uptain*, 531 F.2d 1281 (5th Cir. 1976)." (citing *Birt v. Montgomery*, 725 F.2d 587, 593 (11th Cir. 1984), *cert. den.*, 469 U.S. 874)).

Notwithstanding the foregoing, I agree with the majority's conclusion that the trial court abused its discretion by denying the continuance. As described in the majority opinion, the record indicates that the trial court's decision to deny Jordan's request for a continuation to provide newly retained counsel adequate time to prepare was based on a misunderstanding of the case's procedural history. The denial is subject to review for abuse of discretion, *see, e.g.*, *Hill v. State*, 157 So. 3d 481, 482 (Fla. 2d DCA 2015) (citing *Baron v. Baron*, 941 So. 2d 1233, 1235 (Fla. 2d DCA 2006)), and reversal is warranted where the record "clearly and affirmatively" shows a "palpable abuse of" the trial court's discretion to reject a motion for continuance. *See Magill v. State*, 386 So. 2d 1188, 1189 (Fla. 1980) (citing *Pittman v. State*, 41 So. 385 (Fla. 1906)). It appears from the record that the trial court mistook the procedural facts of the case, something that seems bound to happen from time to time to hardworking but human judges faced with daunting caseloads. However, it would be difficult to conclude that the mistake does not constitute an abuse of discretion; an exercise of discretion based on a misapprehension of the circumstances should not be upheld when the record indicates, as the majority points out, that reasons cited by the trial court are contradicted by the record, the record suggests reliance on a general policy, and there was evidence to support a conclusion that a continuance might have been necessary to safeguard the defendant's right to counsel of his own choosing. *Cf. Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971) ("[T]he court's discretion can be properly exercised only after the court has made an adequate inquiry into all of the surrounding circumstances.").

Regarding the court's failure to hold a *Faretta* hearing, the majority accurately points out that "[u]nder *Faretta* and our precedent, once an

12

*unequivocal* request for self-representation is made, the trial court is obligated to hold a hearing, to determine whether the defendant is knowingly and intelligently waiving his right to court-appointed counsel." *Tennis v. State*, 997 So. 2d 375, 378 (Fla. 2008) (emphasis added).  The majority contends that Jordan did make an unequivocal statement that he wanted to represent himself and suggests Jordan succumbed to the trial court's interference with his Sixth Amendment right to self-representation when he withdrew his request.  Respectfully, I conclude that the record does not support that contention.

On the contrary, Jordan was equivocal in expressing his desire to discharge counsel and represent himself.  While represented by a public defender, Jordan filed his handwritten "Motion for Terminating Counsel of Record," raising several grievances with his public defender—including his lawyer's unwillingness to file a motion to suppress and motion to dismiss—and stating, "I will consider the court appointing pro-bono attorney to effectively represent the changes [sic] in accordance with law or I will proceed pro-se."  This written request did not manifest an unequivocal desire for self-representation but a request in the alternative—either self-representation or different court-appointed counsel—to effectuate his ultimate objective of having his preferred motions heard.  The record does not indicate that a hearing was held on that motion, and Jordan's request to represent himself or get a new lawyer lay dormant for several months until a pretrial hearing was held during which the parties discussed two motions Jordan had filed himself but that his appointed counsel was unwilling to adopt.  Jordan's argument at the hearing confirmed that his ultimate request was not necessarily to represent himself but to have his motions heard.  In one instance, Jordan stated, "I'm willing to go pro se in order to have this—

13

this motion heard, Your Honor"; in a second instance, he stated, "I'm willing to go pro se in order to have this motion heard, and I just honestly feel that I'm not ready to go to trial."

The next morning, another hearing was held regarding Jordan's motions. During this hearing, the court asked Jordan about the basis for his motions, to which Jordan asserted "the reason I want to go pro se is because I clearly have—like they're not representing me." Here, compared to the previous requests, Jordan made a less ambiguous request to represent himself but still specified it was in the interest of *having his motions heard*. Following Jordan's request, the court discussed Jordan's motions with him, explained that appointed counsel justifiably did not want to adopt those motions because it was her position that they lacked merit, and that the court would allow Jordan to present his arguments anyway. At the conclusion of the hearing wherein Jordan made his request, the court asked him if he wanted his appointed counsel to represent him. Jordan stated the following: "I would like her help. I mean, I never wanted her to not represent me." The record further reflects that the court did allow the parties to call witnesses, present testimony, and argue those motions. The court asked Jordan if he wanted his appointed counsel to cross-examine the State's witness; Jordan stated that he did, and counsel did so, consulting with Jordan during pauses in her questioning. The court specifically asked Jordan if counsel asked all the questions he wanted her to ask. He indicated that she did. The court also asked if Jordan was satisfied with the questions asked; he indicated that he was, and that he did not have any additional questions. Jordan was permitted to personally deliver his arguments to the court, with appointed counsel assisting Jordan at times. Upon orally ruling that Jordan's motions would be denied, the court asked if there

14

was anything else to address; Jordan did not express that he wanted to represent himself or that he was unsatisfied with appointed counsel or the proceedings that had just transpired.

"A trial court's decision on a request for self-representation is reviewed for an abuse of discretion." *Holmes v. State*, 229 So. 3d 883, 885 (Fla. 1st DCA 2017) (citing *McGirth v. State*, 209 So. 3d 1146, 1157 (Fla. 2017)); *see also Bova v. State*, 311 So. 3d 1000, 1002 (Fla. 5th DCA 2021) (citing *Slinger v. State*, 219 So. 3d 163, 164 (Fla. 5th DCA 2017)); *Armas v. State*, 312 So. 3d 1062, 1065 (Fla. 1st DCA 2021) (citing *Damas v. State*, 260 So. 3d 200, 212 (Fla. 2018)). A defendant can abandon his request to represent himself. *See Butler v. State*, 374 So. 3d 914, 920 (Fla. 2d DCA 2023) (first citing *Cheney v. State*, 236 So. 3d 500, 502–03 (Fla. 1st DCA 2018); and then citing *Brown v. State*, 45 So. 3d 110, 117 (Fla. 1st DCA 2010)). Here, Jordan explicitly stated that he was amenable to court-appointed counsel, so long as it would not preclude his motions from being heard; he never made a request to represent himself for any other purpose. Subsequently, he effectively rescinded his qualified request to represent himself when he accepted court-appointed counsel with the explanation that self-representation was never his ultimate aim.

After the motions were argued, the trial court diligently checked with Jordan to verify that he was satisfied with appointed counsel's work. Jordan indicated that he was, and he never renewed his request to represent himself. Under these circumstances, the trial court did not abuse its discretion by failing to allow Jordan to represent himself. After Jordan's concerns were addressed to his admitted satisfaction, Jordan abandoned any assertion of his right to represent himself by clearly indicating he wished for appointed counsel to continue representing him.

15

*See Kearse v. State*, 605 So. 2d 534, 537–38 (Fla. 1st DCA 1992) (first citing *Brown v. Wainwright*, 665 F.2d 607, 610–11 (5th Cir. 1982); and then citing *Myles v. State*, 582 So. 2d 71, 72 (Fla. 3d DCA 1991), *quashed on other grounds*, 602 So. 2d 1278 (Fla. 1992)); *see also Deshazior v. State*, 320 So. 3d 333, 335 (Fla. 3d DCA 2021) ("Even though a defendant may unequivocally request to represent himself, the right may be waived through the defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether." (citing *Brown*, 665 F.2d at 611)).  The equivocal nature of Jordan's request to represent himself and subsequent waiver of his right to self-representation belies the majority's conclusion that reversal is warranted for failure to hold a *Faretta* inquiry.

———————————————

Opinion subject to revision prior to official publication.

16